## G. W. CAMPBELL v. THE STATE.

*No. 3266.     Decided February 13.*

**1. Murder—Service of Copy of Special Venire on Defendant.**—Article 617 of the Code of Criminal Procedure provides, that "no defendant in a capital case shall be brought to trial until he has had one day's service of the copy of the names of the persons summoned under a special *venire facias* except where he waives the right or is on bail, and when such defendant is on bail he shall not be brought to trial until after one day from the time the list of persons so summoned shall have been returned to the clerk of the court in which said prosecution is pending," etc. *Held*, that where the defendant was on bail and the sheriff returned his special venire on the morning of the 9th of March, and the clerk immediately made out and furnished a copy of said special venire to defendant, and that on the 10th of March, the defendant, in the meantime having been placed in jail, was also served with a copy of said special venire, and defendant was not put upon his trial until March 12, defendant had no ground to complain that the provisions of the statute had not been complied with.

**2. Special Venireman whose Name is Omitted in Copy Served on Defendant.**—Where the name of one of the special veniremen was omitted from the copy

served upon the defendant, and the omission was discovered while the jury were being impanelled, and after all the names served on the defendant had been exhausted, the said omitted juryman was called and tendered to the defendant, who objected that his name was not upon the list served upon him; whereupon the court stood aside said juryman and ordered fifteen talesmen to complete the jury, and in summoning said talesmen the omitted juryman was one of the fifteen so summoned, and defendant moved that the talesman be set aside on account of this fact, which motion was by the court refused, and it appearing that on his *voir dire* examination said juror could neither read nor write the English language, for which cause he was successfully challenged by the State, to all of which defendant excepted, *held*, no error in any of the rulings.

3. **Opinion Evidence.**—Where on the redirect examination of the State's witness, a brother of deceased, the prosecution was permitted, over objection of defendant, to ask the witness, "what was the reason that he held up the defendant and two others, and wanted to keep the drop on them, when he met them the night after the killing in the pasture?" To which the witness answered, also over objection of defendant, "Because I believed Campbell (defendant) had killed my brother, and belonged to the mob." *Held*, the evidence was opinion evidence, and as such was illegal and inadmissible.

4. **Same.** — Where the State over objection of defendant was permitted to prove by the father of deceased that on the night his son was killed, when he returned to his home and met his wife, "I told her to bear it the best she could; that Campbell and the boys had killed Ed., but were afraid to carry him off, and that Campbell would send word the next morning." *Held*, opinion evidence, and clearly inadmissible, defendant not being present.

5. **Hearsay and Prejudicial Evidence.**—It was error for the court to permit in evidence the declarations, statements, and advice which had been given the State's witness, deceased's father, relative to the necessity of concealing what his testimony would be until the final trial of defendant. *Held*, such evidence was purely hearsay, and calculated to prejudice defendant in the minds of the jury by impressing upon them the opinion of the district judge and district attorney as to the importance of this testimony.

6. **Practice — Impairing Credibility of Witness.** — After one of defendant's witnesses had been sworn and placed under the rule, a witness for the State implicated him as one of the parties engaged in the killing of deceased; whereupon the district attorney caused a complaint to be made, under which said witness was arrested and placed in jail; and thereafter, when he was brought from jail and placed upon the stand to testify for defendant, the court, upon the request of the district attorney, cautioned the witness that he "was charged with the same crime as defendant, his father, and that he might testify, but that if he testified to any fact in any way criminating himself it could be used against him." All of which was done in the presence of and hearing of the jury. *Held*, that the witness not having been indicted was competent, and that the proceeding was error, and was certainly calculated to impair the witness' credibility and standing before the jury.

APPEAL from the District Court of Mason, on a change of venue from San Saba. Tried below before Hon. W. M. Allison.

We take the following general and succinct statement of the case from the printed brief of appellant's counsel:

"On December 2, 1889, the appellant, G. W. Campbell, was indicted by the grand jury of San Saba County, Texas, for murder in the first

degree, in the killing of Ed. Hartman, in San Saba County, on or about the 27th day of November, 1889.

"At about fifteen minutes past 12 o'clock m., on the 27th day of November, 1889, the deceased left his house, where he lived with his father and mother, near the Colorado River, in San Saba County, going out at the back door, in search of his hogs. He did not return at night, and search was made for him by his father and brother and one or two neighbors, but without success, until on the morning of the 28th David Campbell, son of the defendant, came to Hartman's house and told them the dead body of Ed. Hartman had been found back of their (Campbell's) house, in the river bottom, under the bluff. At about the same time, or before, one G. W. Williamson, who lived 150 yards down the river from Campbell's house, informed deceased's brother and one Mr. Murphy, State Ranger, who were out hunting for deceased, that the body had been found, and told where it was, and that Campbell had found the body that morning. Tracks supposed to be made by the deceased were found in Campbell's field and up to his hog pen, and then back up the bottom or edge of the bluff and around into the bottom north and west of the Campbell house, and immediately in the river bottom the tracks of the deceased were found leading up to the place where he was lying.

"Ed Hartman was dead when found, having been stabbed four or five times, and had two wounds in the breast and neck in front, from which it is likely he died. The body was about due east from Campbell's house forty-six yards, and about twenty feet from the water in the river, lying in a narrow bottom, and hid from Campbell's house by a bluff between it and the house, some fifteen or twenty feet high. About twenty steps south of the house there was a trail or path that led down the bluff to the river, which passed south of the body some twelve or fifteen feet, there being a little wash or swag near the body, and just on the bank of this, on the north side, the body was lying with the feet toward the river, and ground tramped up for the space of about ten feet around the body, showing there had been a fight and a considerable struggle. A path or trail went down the bluff just north of the house, and went in a northeast course to a ford on the river, sometimes used, about 160 yards from the house. About 150 yards down the river from Campbell's, and just on the top bank, was another house, in which resided G. W. Williamson and his wife, and his mother, Mrs. Loftin, and her husband. Campbell, the defendant, was a married man, with a wife and nine children. The oldest two were boys, about 14 and 16 years old, and all lived at this place, using the east house as a kitchen and the west house for their place of sleep. The east house was a log house, with chimney in east end, and the west house a box. Campbell and wife slept in the box house and the boys in the kitchen. The doors in the two houses were in the south side of the houses, and a person in the

house could not see the body of deceased.   Mrs. Campbell was soon to be confined, and did give birth to a child in two or three weeks.

"The defendant and his two boys, David and Mackey Campbell, and G. W. Williamson, who lived just south of Campbell, were arrested early in the morning of the 28th of November, 1889, for the murder, taken to the town of San Saba, and put in jail.   The defendant was indicted and the others discharged.   At the next term of the court a change of venue was made to Mason County, which change of venue was by the court without motion.

"At the March term, 1891, of the Mason District Court, the defendant was put upon trial for murder in the first degree. · A verdict was rendered of murder in the second degree, and punishment fixed at seven and one-half years in the penitentiary."

*Triplett & Lewis, M. Fulton,* and *E. Light,* for appellant, filed a very interesting and able brief.

*Leigh Burleson* and *R. H. Harrison,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—Appellant was indicted in the District Court of San Saba County for the murder of one Edward R. Hartman.   The district judge of his own motion, owing to the fact, as stated by him, that a trial alike fair to the accused as well as the State could not be had in either the counties of San Saba or Mills, the latter being the next nearest court house to the court house of San Saba, "owing to influential combinations which would deter witnesses from testifying fully and freely," changed the venue of the case to Mason County. On the trial in the District Court in Mason County appellant was found guilty of murder in the second degree, his punishment being fixed at five years in the penitentiary.

Defendant's first bill of exceptions complains, that he was not served with a copy of the special venire one whole day prior to the time he was placed upon trial.   It appears from the bill that at the time the special venire was returned by the sheriff, on the morning of the 9th day of March, the defendant was on bail, and not confined in jail. The clerk immediately made out a list of the names of the jurors summoned on said special venire, and furnished the same to the counsel for defendant.   Defendant not being in jail at the time his counsel were furnished with this list, could not claim further exemption from liability from trial for longer than one day.   Code Crim. Proc., art. 617.

After defendant's counsel had been served with a list of the special venire, defendant was rearrested on motion of the district attorney, because his bail was insufficient in amount, and placed in jail on the

evening of the 9th of March. It is further made to appear, that on the 10th day of March the defendant, after he was placed in jail, was also served with a copy of the special venire. The defendant was not put upon trial until March 12. The objection as to the service of the copy of the venire is not well taken.

But it is further objected, that in the copy served upon him the name of one of the jurors, to wit, Henry Hasse, who had been summoned as a juror, was omitted; that the juror was present; and while the other jurors were being impanelled it was discovered that the name of Henry Hasse was omitted from the list served upon the defendant in person. After all the names on the copy of the list served upon the defendant had been exhausted, Henry Hasse was called and was tendered for examination as a juror, but the defendant objected, because his name was not on the list served upon him; whereupon he was stood aside by the court, and the sheriff instructed to summon fifteen talesmen to complete the jury, which having been done, and Henry Hasse being one of the fifteen talesmen summoned by the sheriff, defendant asked that the list of talesmen be set aside because Henry Hasse was one of same, which was refused by the court. In his explanation of this bill of exceptions the learned trial judge says, that the juror Henry Hasse on his *voir dire* examination as a talesman stated that he could neither read nor write the English language, and for this cause was challenged by the State, and the court sustained the challenge, to which the defendant excepted. We see no error in the ruling of the court in this matter.

By defendant's third bill of exceptions it is shown, that on redirect examination of its witness Nat Hartman the State was permitted, over objection of the defendant, to ask this witness, "What was the reason you held up Campbell and the other boys, Trowbridge and Stovall, and wanted to keep the drop on them, when you met them in the pasture?" The objection to this question was, that the matter inquired of was irrelevant and immaterial. The witness' answer was, "Because I believed Campbell had killed my brother, and belonged to the mob." The defendant objected to the answer, and asked that it be withdrawn from the jury, which was refused. We are of opinion the court erred in both these rulings, and especially as to the answer, because it gave "the opinion" merely of the witness that Campbell killed his brother, and belonged to the mob. Such opinion was not legitimate evidence.

We are also of the opinion that the court erred in permitting the declarations, statements, and advice given by three parties, to-wit, his attorney, the district judge, and the district attorney, to the State's witness J. R. Hartman in regard to his testimony, these statements and advice being wholly irrelevant and not pertinent to the issues in the case. Such evidence was purely hearsay, and calculated to prejudice the defendant in the minds of the jury by impressing upon them the opinion of the district judge and the district attorney as to the import-

ance of his testimony, and the necessity that it should be concealed or withheld until the final trial of the defendant. McCracken v. The State, 6 Texas Ct. App., 507; Chumley v. The State, 20 Texas Ct. App., 547; Maines v. The State, 23 Texas Ct. App., 568; Nalley v. The State, 28 Texas Ct. App., 387.

Defendant's seventh bill of exceptions shows that the State was permitted, over his objection, to prove by the witness J. R. Hartman what he told his wife on the night his son was killed, as follows: "I told her to bear it the best she could; that Campbell and the boys had killed Ed., but were afraid to carry him off, and that Campbell would send word next morning." This evidence was opinion evidence, and clearly inadmissible, the defendant not being present. See authorities above cited. The court should have excluded this evidence in conformity with the motion of defendant to that effect.

By defendant's twelfth bill of exceptions it is shown, that his witness M. Campbell had been attached, had been sworn and placed under the rule with the other witnesses; that after the trial had been proceeded with, and the State's witness Mrs. Loftin had given in her testimony, in which she implicated said witness M. Campbell as one of the parties engaged in the killing of deceased, the district attorney procured a complaint against M. Campbell for the murder of Ed. Hartman, and under said complaint the witness was arrested and placed in jail. When the witness was brought from the jail to testify in the case, and placed upon the stand, the district attorney asked the court to inform the witness, that while he was permitted to testify, still anything he might say could hereafter be used against him. This request upon the part of the district attorney was made in the presence and hearing of the jury, and the defendant excepted. The court then cautioned the witness, that he "was charged with the same crime as defendant, his father, and that he might testify, but that if he testified to any fact in any way criminating himself it could be used against him;" to which the defendant objected and excepted that the same was improper, calculated to impair the weight of the witness' testimony, and to prejudice the jury. We are of the opinion that the objection was well taken. The witness not being under indictment was a competent witness in the case (Code Crim. Proc., art. 731), and it was erroneous to caution him with a view to his trial under an indictment thereafter to be found against him, and especially so in the presence of the jury. It certainly was calculated to impair the witness' credibility and standing before the jury.

For the errors above pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Davidson, J., being disqualified, did not sit in this case.