### GEORGE KOLLER v. THE STATE.

*No 1483. Decided December 2nd, 1896.*

**1. Murder—Continuance—Materiality of Absent Testimony.**

Where a defendant on trial for murder, admits to having shot deceased with a gun, it is immaterial that he could prove by a witness for whom a continuance was sought, that said witness saw no gun or other weapon in defendant's hands as he walked from the place of the killing.

**2. Same.**

Where there was no issue as to where a witness was standing at the time of the killing, a continuance to obtain the testimony of said witness, as to where he was at the time, will be Held: To be properly refused.

**3. Same—Evidence—Declarations by Defendant Prior to Homicide—Res Gestæ.**

On a trial for murder, it is admissible, as part of the res gestæ of defendant's going home to get his gun and returning, for the defendant to prove, that when he started to get his gun, he stated tô the witness that he "did not intend to kill deceased; but, that he could not insult him as he had done, unless he would take it back; that he expected only to talk to him, and he would not kill him."

**4. Continuance.**

Where the testimony of defendant himself, makes a case of self-defense, the testimony of an absent witness for whom a continuance was sought, who would testify, that he was with defendant at the time of the killing; that deceased advanced upon defendant with pistol in hand, saying that he would kill him, is material, and should authorize the granting of a new trial.

**5. Defendant as a Witness—Motive and Intent.**

A defendant is not only permitted by law to testify, but he has the right to testify as to his intentions; and courts cannot assume that what he says as to his intentions is false.

**6. Provoking Difficulty—Self-defense.**

The doctrine of provoking a difficulty, is in the nature of an estoppel; that is, if the defendant provokes the difficulty and produces the occasion, with the intention to kill the deceased, he is estopped from pleading or relying upon the fact, that his life was in danger; and, the law will not permit him to plead self-defense, though his life was in danger.

**7. Murder—Mutual Combat—Charge.**

On a trial for murder, where the evidence shows, that the parties had a violent wordy altercation, and deceased said: "Wait till I get my pistol. I will talk to you

with my pistol." And, defendant said: "Wait till I come back. I will show you about getting a pistol." And deceased went into the house and defendant went off and got his gun and returned, and found deceased swinging his pistol around his head and declaring his intention to kill defendant; and, when he saw defendant, said: "There is the Dutch son-of-a-bitch now! I will kill him now." Whereupon defendant shot and killed him. Held: The court should have submitted to the jury the law of mutual combat willingly entered into by the parties with deadly weapons.

APPEAL from the District Court of Colorado. Tried below before Hon. THOMAS H. SPOONER.

Appeal from a conviction for murder in the second degree; penalty, five years' imprisonment in the penitentiary.

The indictment charged appellant with the murder of Estavan Rios, in Colorado County, on the 24th day of June, 1896, by shooting him with a gun. The salient features of the case are sufficiently stated in the opinion.

[No brief for appellant.]

*Mann Trice,* Assistant Attorney-General, for the State.—Appellant and deceased had some words at a dance. Appellant left the dance, went home, got his gun and returned; and while deceased was being taken to his wagon, and not making any demonstration whatever toward the appellant (according to the theory of the State), appellant shot and killed him. Appellant admits that they quarreled, and the deceased threatened to get his pistol; also that he left the scene, armed himself, and returned. While appellant swears that he shot deceased at the time he was making a demonstration to shoot him, yet viewing the case from his own statement, this would be murder in the second degree, as he voluntarily entered into the combat.

The testimony of the absent witnesses is immaterial, because the witness whom it was sought to contradict was not even placed on the stand during the trial. In view of all the testimony in the record, the alleged testimony of the witness, Fostera Flores, is not probably true, and had it been adduced there is no probability that the result of the trial would have been different.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and given five years in the penitentiary, and prosecutes this appeal. On the trial of the case, the appellant made a motion for a continuance on account of the absence of John Bogardes and Faustina Cordes, being his first application for a continuance. The diligence appears to be sufficient. Appellant says that he "expects to prove by the witness, Bogardes, that he was on the steps or in the house, and that the State's witness, Juanita Tamesa (Mrs. Rios), was mistaken when she said that the said Bogardes was standing out in the yard, about eight steps from the gallery, and saw the deceased and the defendant at the time of the shooting; and, further, by said witness defendant proposes to show that he saw no gun or other weapon in the defendant's hands as he walked away from the place of the killing." As to the latter facts

stated, they are absolutely immaterial, in view of the fact that defend-
ant himself admits shooting the deceased with a gun; and as to the first
portion of said evidence, we fail to see its materiality, when no issue is
made as to where said Bogardes was standing at the time of the homi-
cide.  If we recur to the statement of facts, the wife of the deceased,
instead of placing said witness out in the yard eight or ten feet from the
defendant at the time of the shooting, placed him inside of the house.
Defendant's application also shows that he expects to prove by the wit-
ness, Cordes, "that, before the difficulty, deceased cursed and abused
defendant in a very offensive manner; that defendant went and got his
gun, stating to witness that he did not intend to kill deceased, but he
could not insult him that way, unless he would take it back; that he
expected only to talk to him, and that he would not kill him; that said
witness was with the defendant all the time, and stayed right at him,
when the deceased attempted to shoot him; that said witness will tes-
tify that, before defendant did anything, or made any attempt to shoot
deceased, deceased came around the house, and, when he saw the de-
fendant, waved his pistol, and said, 'There is the Dutch son-of-a-bitch;
I'll kill him now,' and defendant came up, and stood near the corner of
the house, and did not say or do anything to the deceased until said at-
tempt was made by the deceased; that this witness stood so near to the
defendant as to be enabled to see all that occurred." As to what de-
fendant may have said to said witness about his proposition "that he
did not intend to kill deceased, but he could not insult him," etc., it
was admissible as a part of the res gestæ as to his purpose in going
home and getting the gun and returning.  As to the other portion of
said testimony, which was proposed to be proved by the absent wit-
ness, its admission depends upon whether or not there was in this
case an element of self-defense.  Sherman McMillan, one of the de-
fendant's witnesses, testified only to the first altercation between
the defendant and the deceased.  He says that he was "present at the
fandango, playing the accordion; that he heard a fuss outside; heard the
words 'son-of-a-bitch' passed, but did not know by whom; went out of
the house, and heard Koller say to Rios, 'what in the hell is the matter?
I have said nothing out of the way to you.'  Come here; I want
to talk to you.  Deceased then said, 'I have no talk for you.
Wait till I get my pistol, and I'll talk to you with my pistol.'  And
Koller says, 'Wait till I come back, I will show you about getting a
pistol.'  He started in the house, and Koller started off.  Said witness then
left, and when he had proceeded about 200 yards he heard a shot,
but did not see any of the difficulty."  Koller, the defendant, testified
"that he was about starting home from the fandango, and heard the
deceased outside of the house quarreling.  As he got to the back door,
he called to him, and told him he wanted to speak to him.  Deceased
said, 'I have got no talk for you,' and applied to him a vile epithet,
and said, 'I will go and get my pistol and kill you.'  Defendant told
him to wait until he got back.  I then went and got my gun, and came

back with it, and got out in the yard, about five steps from the corner, at the northeast of the house, and set my gun down in front of me, and was resting on it. The deceased came around from the southeast corner of the house, swinging his pistol around his head, and said, 'I will use my pistol where and when I please, in the town or in the country, or anywhere else; and if I can't kill him here, I will go to his house and kill him and his family.' And he then saw me, and says, 'There is the Dutch son-of-a-bitch now, I will kill him now.' I then took my gun and shot him. There was another Mexican with him at the time. He said nothing, and I did not know who it was. I was gone about fifteen minutes after my gun. I did not intend to kill the deceased, but came back to get him to retract and explain what he meant by using such insulting language to me, when I had said and done nothing to him. I had no desire to kill him, and I wanted him to simply apologize for the insult, and I was forced to kill him to save myself. I would not have killed him but for the fact that he was trying to shoot me." The question, therefore, is whether there was any evidence in this case tending to present self-defense. In the view we take of this case, there are three theories which should have been presented to the jury upon the above testimony: (1) For the State, that the defendant went home, armed himself, returned to the fandango, and, without provocation, shot and killed the deceased. (2) That the defendant, after some wordy altercation with the deceased, being challenged by the deceased, armed himself, returned to the fandango, and willingly entered into the combat. (3) That the defendant, after a wordy altercation with the deceased, being insulted by him, went home, armed himself, came back without intending to kill deceased, and, while doing nothing, the deceased flourishing his pistol over his head, accompanying the same with threats to immediately kill the defendant, was shot by the defendant in self-defense. We are not attempting to prescribe the form of the charges upon these theories. It may be contended that the last theory is not in the case, viz: self-defense. There is strong testimony tending to show that the defendant returned to the fandango with the gun with the intention of killing the deceased, or at least, that he entered into the conflict voluntarily. But the law permits him to testify in the case. He has a right to testify as to his intention. He denies any such intention, and hence we cannot assume that what he says is false. He swore that he did not intend to kill him, but returned for the purpose of obtaining an apology for the insults he had received, and while doing nothing his life was ·in danger, or, at least, the circumstances were such as to induce him to reasonably believe that his life was in danger at the time he shot the deceased. If, therefore, self-defense is in the case, the testimony of the absent witness was material. The jury might not have been inclined to believe the testimony of the accused as readily as they would a disinterested party.

Counsel for the appellant complains of the charge of the court because

it repeatedly instructed the jury in regard to provoking the difficulty by the defendant. This doctrine is not in this case. If the State's theory is correct, defendant did not provoke any difficulty, but without any provocation, being in no danger of any character of violence from the deceased, he shot and killed him. This principle applies in cases in which the defendant relies upon the fact that his life was in danger, or that he was in danger of serious bodily injury, from the deceased or his adversary. Now, if he provoked the difficulty, or brought about the occasion with the intention to kill deceased, defendant is estopped from pleading or relying upon the fact that his life was in danger, etc. It is in the nature of an estoppel; for if he provokes the difficulty, and produces the occasion with the intent to kill, the law will not permit him to interpose the plea of self-defense, though his life be in danger. According to the testimony of the State, the deceased was being taken unarmed, partially drunk, to his wagon, for the purpose of returning home, when he was shot down by the appellant. The defendant's life or body was in danger of no violence at all. We believe, however, that the court should have submitted to the jury a totally distinct doctrine, to-wit, that the appellant voluntarily and willingly engaged in the deadly conflict with the deceased. This theory of the case was not submitted to the jury. But to charge the jury that the appellant provoked the difficulty was wrong, from the fact that there was not a particle of testimony presenting such a phase of the case. See, Thomas v. State, 34 Tex. Crim. Rep., 481. In settling whether this was a cold-blooded assassination, or whether this was a case in which the defendant willingly entered into a deadly conflict and slew his adversary, or whether the defendant acted in self-defense, there is no tribunal more capable of performing this duty, than the jury, under proper instruction. The court cannot assume a theory, and submit it to the jury, without evidence in its support; nor can the court refuse to submit to the jury a theory of the case, because the judge does not believe it is true, if there be evidence in the record presenting such a theory. The defendant in all cases is entitled to have the law applicable to every phase of the case submitted to the jury by proper instruction. We would further observe that there was no evidence authorizing a charge of the court as to self-defense predicated on the theory that a violent assault was being made on defendant of less magnitude than one with intent to murder or do serious bodily injury. For the error of the court in overruling the motion for a continuance, and the error in the charge of the court, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*

Hurt, Presiding Judge, absent.