Frank Asken v. The State.

No. 2926.  Decided November 30, 1904.

**1.—Murder—Continuance—Defendant As Only Witness.**

Where the State made a case of unprovoked killing, and the defendant was the only witness who supported his theory of self-defense, and from the application for continuance it appeared that the testimony of the absent witnesses would have strongly supported the defendant's theory, and if the jury believed them an acquittal would evidently have followed, the application, being sufficient in other respects, should have been granted. Following Rucker v. State, 40 S. W. Rep., 991; Koller v. State, 38 S. W. Rep., 44.

**2.—Same—Defendant as a Witness—Disinterested Witnesses.**

Jurors, as a usual rule, are rather slow to believe defendant's testimony in his own behalf, and where there are disinterested witnesses by whom he can prove the same facts, they ought to be present if they can be obtained by anything like reasonable diligence.

**3.—Same—Charge of Court—Defense of Property.**

Where the evidence showed that the deceased either bet only 30 cents against defendant's 50 cents, or if deceased bet 50 cents, took up 20 cents, when appellant won at a game of craps, there was no error because the court failed to charge the law with reference to the defense of property, or the right to kill for theft at night.

**4.—Same—Charge of the Court—Uncommunicated Threats.**

Where upon trial for murder the court admitted uncommunicated threats of the deceased against the defendant, to assist the jury in determining the question as to who began the difficulty, that being an issue; there was no error in not considering them as a basis for a charge on self-defense.

Appeal from the District Court of Hopkins. Tried below before Hon. H. C. Connor.

Appeal from a conviction of murder in the second degree; penalty, twenty-three years imprisonment in the penitentiary.

The opinion states the case.

*C. E. Sheppard,* for appellant.—As to the materiality of the facts which appellant alleged in his application for continuance the witnesses Townsend and Shine would testify to, under the issues of the case as above explained, it will not be necessary to refer, because that said facts, if proven, would be superlatively material, will, at once, be admitted. That said witnesses, if present, would have so testified is uncontroverted, so, if sufficient diligence was used to secure the attendance of said witnesses or to procure their testimony, and said testimony, if

secured, was probably true, then the error of the court is complete and the case should be reversed.

As to diligence, appelalnt in his application for continuance shows that he was not served with a copy of the indictment until January 30th, 1904, and the case was called for trial and the application for continuance made on the 22d day of February, 1904, thus he only had twenty-one days in which to secure the attendance of witnesses or to procure their testimony. He further shows that all of said time he was confined in the county jail and did not know until about a week before the trial that Hamp Townsend was absent from the county, but believed that he was in the county subject to service with process of the court because it was the place of his residence. After learning of his absence he ascertained that he was out of the State, and was informed that he was somewhere in the Indian Territory. Very soon after this indictment he had a subpœna to issue to Hopkins County for Townsend, and only found out that he was not to be found in the county after the sheriff had made his return so stating. It was then too late for him to either get the witness or to have his depositions taken, because he did not then know, and did not have time to find out, at what point in the Territory he was to be found. Appellant showed further that Hokpins County was witness' home and that he was only absent temporarily because of a charge of gaming, and that he would very probably be able to get him before the next term of the court.

The application and the record show that the witness Shine was frequently in the county, although it appears that he was a transient negro, but that appellant did not know at the time of the trial where he was. There is no question that both the witnesses were present and witnessed the whole difficulty from beginning to ending, seeing and hearing everything that passed between appellant and deceased, and appellant was certainly entitled to a reasonable opportunity to have them present and testify at his trial, which opportunity we say was denied in forcing him into trial. Koller v. State, 38 S. W. Rep., 44.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Conviction of murder in the second degree, penalty affixed being confinement in the penitentiary for a term of twenty-three years.

Appellant presented his first application for continuance, which was refused. The State's case, by several eye-witnesses, was to the effect that all the parties named were engaged in playing a game of craps; that appellant threw the dice, and deceased, John Ivery, "faded" him, as the witnesses call it. Defendant bet 50 cents. Deceased either bet only 30 cents, or if he bet 50 cents, when appellant won he took up 20 cents. This brought up an angry altercation between them, in which appellant accused him of putting down only 30 cents and demanded of him the 20 cents, charging him with holding back or

taking his money. This was denied by deceased, whereupon appellant gave him the damn lie, jumped up, pulled his pistol, snapped it at deceased, who started to walk away, when appellant fired, the ball entering just under the left shoulder blade, coming out towards the front, through the breast. This was the substance of the State's case. As to the real facts of the shooting, they also testified that appellant pulled out his knife and cut his (appellant's) hat and clothing, walked up to the body of deceased, and put the knife in his hand, stating this would show deceased had used a knife on him. Appellant testified in his own behalf: When he accused deceased of getting 20 cents of his money or failing to put down the 50 cents against his (appellant's) 50 cents, that deceased called him a damn liar, immediately got out his knife and began cutting at him with it, cutting his hat and coat; that he immediately sprang up from where he was squatting on his knees, and pushed deceased back and fired. That he could not say at the time he fired whether deceased was fronting him or had his back to him; and that the witnesses who testified against him, requested him to state that he and deceased were alone engaged in the game as they did not desire to be brought into court and fined for gambling, and that, in making the statement to the officers about the homicide, he did in fact state that he and deceased alone were present at the scene of the homicide. Two of the eye-witnesses to the homicide were absent, Hamp Townsend and one whom the witnesses denominate "Shine." These witnesses were alleged to be temporarily absent from the county, and he expected to secure their presence at the next term of the court. By both witnesses he expected to prove the same facts, and practically the same as he himself testified. He also expected to show by the witness "Shine" that he (appellant) had Shine's pistol. Appellant himself testified to that fact, and that he had borrowed it and carried it with him when he went to Dallas, from which place he returned on the train on the evening of the homicide, and went from the train to a social gathering, near which this gambling occurred and where the homicide took place. The State made a case of apparently unprovoked killing, at least the only provocation shown by the State's witnesses arising at the time, was the fact that deceased had either failed to put down all of the 50 cents in the bet above alluded to, or having put it down had taken up 20 cents. There had been a previous difficulty between defendant and deceased, in which deceased had beaten him rather severely, but friendship had been restored in the interval and before the latter difficulty, though no very good feeling existed. Appellant's case, if true, was one of self-defense. All of the eye-witnesses who testified on the trial, supported the State's theory, leaving appellant's testimony alone to combat it. If the absent witnesses had testified as stated in the application, they would have strongly supported appellant's theory, and if the jury believed them, an acquittal would evidently have followed. We are unable to say what the jury would have decided with that testimony before

them. In any event, it occurs to us that appellant was entitled to have the evidence of these two absent witnesses before the jury, and have them pass upon their testimony. Rucker's case, 40 S. W. Rep., 991. To the same effect is Koller's case, 38 S. W. Rep., 44, 36 Texas Crim. Rep., 496. As was said in Koller's case, "If self-defense is in the case, the testimony of absent witnesses was material; the jury might not have been inclined to believe the testimony of the accused as they would the evidence of a disinterested party." It will be noted here that defendant alone testified to his theory of self-defense. In Gilcrease v. State, 28 S. W. Rep., 531, the State's case was one of unprovoked killing; the defendant that of self-defense. That case was reversed because a second continuance was refused. So we have the evidence of the State's witnesses showing not only an unnecessary killing, and one practically unprovoked, but we have, on the other side, defendant alone testifying in his own behalf, unsupported by any testimony, absolutely contradicting all of the eye-witnesses to the transaction, placing his absent witnesses present at the time and place of the homicide. The jurors, as a usual rule, are rather slow to believe defendant's testimony in his own behalf, and where there are disinterested witnesses, by whom he can prove the same facts, they ought to be present if they can be obtained by anything like reasonable diligence. Applications for continuance to support the testimony of a defendant alone, have been regarded somewhat more favorably than those where the continuance was sought for the support of disinterested witnesses. His testimony comes before the jury freighted with the idea of self-interest. The disinterested witnesses are not burdened with this. As the case is presented to us, we believe appellant ought to have been awarded the continuance.

It is contended that the case should be reversed because the court did not charge the law of self-defense with reference to the defense of property. We do not agree with this contention. As shown by the evidence it seems very clear that deceased did not take any money belonging to appellant, but that he failed to place his money in the position to appellant's in the bet as he ought to have done. If appellant had won 50 cents from deceased, and deceased had only placed 30 cents against appellant's 50 cents, it could not be possibly claimed that the other 20 cents was appellant's; and if he had actually placed 50 cents against appellant's 50 cents, and before appellant took charge of the money or had reduced it to possession had taken it, it was not appellant's money, in the sense that he had the right to kill for theft at night, or to defend the property. If appellant had reduced the money to possession when deceased had taken or attempted to take it away from him by violence, it would be robbery or attempt to commit robbery, and in such event appellant might shoot justifiably. But those are not the facts in this case.

Another contention was urged against the charge, in that it failed to charge with reference to the law of threats. Two witnesses testified to conditional threats made by deceased against appellant, but these were

not communicated. They were introduced, not on the theory of justification, because it was admitted they did not enter into appellant's mind in committing the homicide. The court properly admitted them, as an aid to the jury in solving the question as to who began the difficulty,— that being an issue in the case. Uncommunicated threats introduceable to assist the jury in determining the question as to who began the difficulty, when that is an issue, do not form the basis of a charge on self-defense; that is, it would not justify the defendant in killing, for in no sense could it be held that it prompted appellant in any thing he did.

The question of newly discovered evidence is not discussed. The witnesses can be obtained upon another trial.

For the error of the court in refusing to continue the case, the judgment is reversed and the cause remanded.

*Reversed and remanded.*