## Louis Beard v. The State.

### No. 4457. Decided January 20, 1909.

**1.—Local Option—Continuance—Defendant as a Witness—Corroboration.**

Where upon trial for a violation of the local option law, it appeared that the testimony of the absent witnesses would have corroborated the defendant's theory as testified to by himself, and would otherwise have supported his defense, the application for continuance which in other respects was sufficient should have been granted.

**2.—Same—Charge of Court—Sale.**

Upon trial for a violation of the local option law where the evidence raised the issue as to whether a sale took place in the county of the prosecution, etc., the jury should have been charged that if the money was accepted in the county of the prosecution and paid for the whisky in another county and that the same was conveyed to the county of the prosecution by a party now under the control or as agent of defendant, then defendant would not be responsible for the delivery of the whisky in the county of the prosecution; and the sale would be in the other county.

Appeal from the County Court of Tyler. Tried below before the Hon. A. G. Reid.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

*Joe W. Thomas,* for appellant.—On question of sale: Bruce v. State, 36 Texas Crim. Rep., 53; Sinclair v. State, 45 Texas Crim. Rep., 487; 77 S. W. Rep., 621; Marsden v. State, 111 S. W. Rep., 947; Northcupp v. State, 35 Texas Crim. Rep., 584; Bogel v. State, 42 Texas Crim. Rep., 389; 55 S. W. Rep., 830; Treadaway v. State, 42 Texas Crim. Rep., 466; 17 Am. & Eng. Enc. of Law, 300; 24 id., 1071; 22 id., 1339. On question of continuance: Wilson's Crim. Procedure, arts. 594-598.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of violating the local option law, his punishment being assessed at a fine of $25 and twenty days imprisonment in the county jail.

George Day, witness for the State, testified that he lived in the town of Warren, Tyler County; that he hailed and stopped appellant who was riding along the street horseback; that he walked up to where he was and gave him a dollar with the request that he get for the witness a bottle of whisky down at Village Mills and send it to him. Appellant took the dollar. Later on and about midnight the witness received a bottle of whisky. J. B. Owens (the delivery wagon driver for Mr. Williford) brought the whisky to the witness. This witness says appellant was not at the delivery wagon; he was horseback. That he did not know from whom he (appellant) got the whisky, but he bought it from some one in Hardin County where saloons are run. He further testified that he intended that appellant should buy the whisky down there at a saloon; that is, in Hardin County, but he does not know from whom the whisky was purchased. That appellant had no whisky so far as the witness knew. That Owens worked for Mr. Williford and lived at Warren. He further states: "I told defendant to buy me a bottle of whisky and send it to me. I knew he had to buy it in Hardin County." Local option was in force in Tyler County where this prosecution was had, but was not in force in Hardin County, at Village Mills, where the whisky was purchased. John Brown testified that he was working in appellant's saloon at Village Mills. The arrangement between them in regard to the management of the saloon he details as follows: "The way I run the saloon was this way: Defendant checked over or inventoried all his goods, whisky, beer, etc., in the saloon. This was all charged to me. I had to account to him for that much money; that is, the value of the goods so inventoried.

Defendant had nothing whatever to do with the whisky, etc., after they were inventoried and turned over to me. He never sold any whisky to any one. He bought and paid for over the counter all the beer or other drinks that he drank. He bought his drinks and paid for them to me just the same as any other customer. Defendant had no control, possession or interest in the goods after turned over to me, and he had no authority to sell same. He never did sell a bottle of whisky at the saloon that I know about. I alone sold the whisky. I do not remember about defendant giving me the dollar for George Day at any particular time, but do remember about that time, that is June 15, 1907, when J. B. Owens came down in the hack of Mr. Williford's, that several dollars were put on the counter for whisky; don't know whether defendant or some one else put them there, and that defendant gave me a dollar that Mr. Day or some one sent for a bottle of whisky. I accepted the dollar and sold the whisky and sent it to Warren to the party by J. B. Owens. Defendant told me who wanted the whisky. I think it was Day. I know it was about 12 o'clock at night, for I was rushing the boys to get out that I may close before twelve." On cross-examination he said, in regard to the sales and work of the saloon business that he paid himself first, and then paid appellant the balance taken in; that is, the amount charged. The amount was charged to this witness when the goods came in and he had to pay appellant the value of the goods so turned over to him. He had full control of all the goods in the saloon, and sold all the whisky that was taken from the saloon, and was responsible for the goods to Beard. That appellant sold no whisky. Appellant testified in his own behalf that he never sold any whisky at that time; never would sell whisky behind the bar, and the way he did was to measure up a barrel of whisky in quarts, and other bottles, and then check them out to the man working for him, and he sold and paid the money over to him, appellant. Appellant in fact owned the saloon under these terms and conditions.

In regard to the facts connected immediately with the case, he testified, as follows: "I saw George Day in Warren about the 15th day of June, 1907. He gave me a dollar to buy for him a bottle of whisky. I gave it to Mr. John Brown, who has just testified, or Dan Stewart. I believe it was Brown, but am not sure. At any rate, J. B. Owens came down in Williford's delivery wagon and carried the whisky to Warren. The boys at Warren sent the wagon down. I had nothing to do with the wagon. The boys sent it for the whisky. There were several parties who sent down by Owens for whisky that night. I think the wagon left Village Mills about 12 o'clock that night. I told Brown or Dan Stewart which party was at the time running the saloon, who sent the dollar to buy the whisky. Brown or Stewart sold the whisky and sent it up by Owens. Brown or Stewart delivered the whisky to Owens for Day. I did not sell the whisky to Day. Brown or Stewart sold the whisky

to George Day. I never sold George Day a bottle of whisky. I did not intend to make a sale of whisky in Warren, Tyler County, Texas." He further states, "I never meant to sell a bottle of whisky to George Day at any time. I could not sell the whisky, for it was under the exclusive control of John Brown, Dan Stewart, or whoever was in charge. I had no right to sell whisky, and could not have done so."

Brown and Stewart were the employes of appellant at different times, and the testimony seems to be just a little uncertain as to whether Brown or Stewart was in charge on the particular occasion. These witnesses make it appear that Hamulton and Peters were present at the time the whisky was sold as was J. B. Owens.

Continuance was sought for these three witnesses and should have been granted. They would have corroborated appellant's theory as testified by himself and Brown had they been present; and Owens would have testified as alleged in the application for continuance that he was running the delivery wagon for Williford, and went down to Village Mills in Hardin County at the suggestion of these different people to bring whisky up for them from Village Mills into Warren, Tyler County. A continuance in this case should have been granted, and it was error to refuse it.

There are some charges requested also that should have been given submitting pertinently the law to the facts in regard to the question of sale. The jury should, we think, have been charged to the effect that if the money was accepted in Tyler County and paid for the whisky in Hardin County, and that the whisky was conveyed to Tyler County by a party not under the control or as agent of appellant, then he would not be responsible for the delivery of the goods in Tyler County. Under this character of case the sale would be in Hardin County.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*