Regugio Jaureque. v. The State.

No. 4564.     Decided February 3, 1909.

**1.—Rape—Continuance—Alibi.**

Where upon trial for rape the diligence shown was scarcely sufficient, and the alibi sought to be proved by the absent witnesses did not combat the State's case sufficiently to render their testimony inconsistent with the testimony of the prosecuting witness; and it was shown conclusively, without explanation by defendant, that the weapon inflicting the wounds upon prosecutrix was that of the defendant, there was no error in overruling an application for continuance.

**2.—Same—Variance—Name of Injured Party.**

Where upon trial for rape it was claimed that the name of the injured party was "Albino Olenick" in the indictment, and that her name was "Albina" under the evidence; and that the indictment had been changed to conform to the proof; but an inspection of the original indictment showed that the name of prosecutrix was "Albina," there was no error.

**3.—Same—Charge of Court—Circumstantial Evidence.**

Where upon trial for rape the identity of the defendant was established positively by the testimony of the prosecutrix, there was no error in the court's failure to charge on circumstantial evidence.

**4.—Same—Evidence—Wounds Inflicted—Charge of Court.**

Where upon trial for rape the evidence showed that the wounds inflicted upon prosecutrix by the defendant and the act of carnal intercourse, and everything in fact that occurred was one continuous transaction, it was part of the res gestae and clearly admissible, and there was no error in the court's failure to limit this testimony with reference to the wounds inflicted.

Appeal from the District Court of Wilson.     Tried below before the Hon. E. A. Stevens.

Appeal from a conviction of rape; penalty, death.

The opinion states the case.

*C. L. Patterson* and *J. E. Canfield,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was convicted of rape, and his punishment assessed at death.

On the 2d day of July, 1908, in Wilson County, near Sutherland Springs, on the public road, Albina Olenick was set upon by a man whom she identifies as appellant, and against her will and in spite of her struggles and protest cruelly ravished. In addition to this she was beaten, bruised and stabbed a number of times about the breast and left in an almost unconscious condition with a knife yet quivering in her flesh. When she arrived at the house where she lived her first exclamation was, that she had been ravished by appellant. Her clothing was bloody; her face was badly bruised; her hair was full of grass-burrs and various thorns, and several of her teeth were knocked loose. Appellant was arrested the next day and brought to her presence and identified by her.. On the trial she testified that she had seen appellant eight times before the day of her cruel outrage. That on the day in question, in the town of Sutherland Springs, she had undertaken to interpret for him in an effort he was making to buy some medicine. The evidence showed he was camped something like seven hundred yards from the scene of the outrage. That he was in Sutherland Springs on the evening the offense was committed and a short time before its commission. The knife which remained in the breast and body of Albina Olenick was shown to belong to appellant. The tracks found near the scene of the struggle corresponded very closely with those made by him. The prosecuting witness testified that at the time he assaulted her he had on a brown looking shirt and a pair of blue overalls. The testimony of the sheriff who arrested appellant was to the effect that he had on him when arrested an undershirt and an old pair of brown stripped pants. . The witnesses who saw him at Sutherland Springs a short time before the assault occurred, testified in substance, that he had on a dark or brown pair of trousers. The prosecuting witness testified that while he was in the act of assaulting her, that she tried to hallo; and that he heat her in the face and choked her, and said in English: "You son-of-a-bitch, I will kill you." The witnesses introduced on the part of both the State and appellant testify that he did not and could not speak English. For the purpose of contradicting the prosecuting witness, the defendant offered in evidence a statement in writing made by Albina Olenick, when she was thought to be dying in which she made the following statement: "And then he dragged me through the fence and raped me right there." Her statement on the witness stand was that the act of intercourse occurred before he dragged her through the fence. Appellant undertook to establish an alibi, but it was wholly inconclusive, and under any of the testimony, as we read the record, he might have been present when the rape took place, and yet have been at all the places named by the witnesses. While there are some slight discrepancies and some unimportant contradictions in the testimony of the prose-

cuting witness, yet viewing all the facts together, the record leaves us without doubt that appellant was guilty of the most horrible and unprovoked assault on this helpless young girl.

1. When the case was called appellant made an application for continuance on account of the absence and for the want of the testimony of Elejio Jr. Castro and Manuel Castro, who were alleged to reside in Wilson County. The diligence averred was that on the 14th of December, 1908, he caused subpoenas to be issued by the clerk of the court and placed in the hands of the sheriff of Wilson County on same day; that said officer returned said subpoenas into court that same day not executed. The application contains the following additional averment: "The defendant expects to prove by said witnesses that on the evening of the said crime, the defendant got to his home about eight or nine o'clock, and remained there all night; and that it was impossible to have been at the place of the alleged crime at the time it was committed. The said witnesses are the sons of Ecidro Castro, and live in the Grass Pond settlement, about four or five miles from the place of the alleged crime." Then follows the other statutory requirements of a first application. In approving the bill of exceptions touching this matter the court makes the following explanation and statement: "The indictment was returned and filed in court on Monday, December 7, 1908, and on the same day the defendant and his attorney both being present, a special venire was ordered and the cause set for Monday, December 14, 1908, and his attorney at once had process issued for witnesses. On the morning of December 14, when the case was called for trial, the defendant's attorney having been unable to arrange his fee withdrew from the case, whereupon the court appointed Messrs. C. L. Patterson and J. E. Canfield to represent the defendant; and after the State had announced they presented an application orally for a continuance, which by agreement was reduced to writing, and at the same for process for the witnesses, counsel stating that he understood Ecifro Castro had two boys who might know what time the defendant went to Castro's house on the evening of the alleged rape; but he did not know whether they did or not. The application was overruled because of a want of diligence on the defendant's part. In any event the trial developed that the testimony would not have contradicted the prosecuting witness who testified she was ravished about sundown, as defendant could easily have traveled four or five miles afterwards by eight or nine o'clock." We think the explanation of the court demonstrates beyond doubt the deficiency of the application not alone in the lack of diligence, but shows beyond doubt or controversy that this testimony would not have contradicted the prosecuting witness; but if admitted to be true, that same was wholly consistent with her testimony and consistent with the guilt of the accused. The proof shows that defendant was camped with his brother-in-law about seven hundred yards from where the crime is alleged to have been com-

mitted. The prosecuting witness testified that she had gone to the town of Sutherland Springs; that she saw appellant in town that evening, and that while returning home, and when she had got within about a half a mile of her home the defendant rushed out upon her, seized her and stuck a handkerchief in her mouth, dragged her out on the side of the road and ravished her and beat her in the face and stabbed her with a knife and left her for dead. That she went home and upon reaching there about nine o'clock acquainted her people with the matter and physicians were immediately summoned, who found her prostrated from stabs, wounds in the breast and bruises of her private parts, showing recent acts of violence and penetration. These witnesses lived only a short distance from the county site; and it is to be noted that their affidavits were not produced upon motion for a new trial, showing the facts to which they would testify, and in view of the testimony, both for the State and the appellant, showing appellant to be near the place where the crime was committed and about the time it was committed, it is rendered quite improbable that these witnesses would have testified to appellant being at their father's place at any such time as would have made it impossible for him to have committed the offense. We think, therefore, the court rightfully overruled the motion for continuance, and that same is substantially without merit.

2. The next point made is, that there is a variance in the proof and allegation in the indictment. It is urged and claimed that the indictment in the case was amended as to a material part without the consent of the defendant and without the permission of the court, in this: that the alleged name of the prosecuting witness, when such indictment was returned into court and up until the commencement of the trial of this cause, was "Albino Olenick," and during the trial and at the time said case was submitted to the jury, said indictment, as to the said name, was amended and changed from Albino to Albina, and that such change and amendment was a matter of substance and not of form, and could not be amended. In approving the bill touching this matter, the court makes the following endorsement: "An inspection of the indictment did not show any indication whatever of its having been altered or amended, and no proof was offered on that point." The original indictment has been sent up in the record. An inspection of same shows that the name is written very carefully Albina Olenick twice, with such legibility that it is almost impossible to be read otherwise than as Albina. There is no merit in this contention.

3. It is next urged that the court erred in not charging on the law of circumstantial evidence. There is no possible merit in this contention. The fact of the offense as well as the identity of appellant was testified to by the prosecuting witness with the utmost positiveness and circumstantial detail. In such a case it is evident

that the court is not called on to charge the law of circumstantial evidence.

4.  It is urged that the court erred in admitting in evidence testimony of the wounds inflicted upon the prosecutrix by appellant in striking her and in bruising her and in stabbing her with his knife, as it appears by her testimony that these wounds ·were inflicted and especially the serious wounds in her breast, by a knife after the completion of the offense of rape. It will be noted by a careful reading of the testimony of this witness that these wounds, and everything, in fact, that occurred happened altogether, that same was one continuous transaction, and was clearly a part of the res gestae, and was clearly admissible not only to identify appellant and as affecting the issue of consent and force, but it is equally clear, as we believe, that the court was not called upon as appellant urges to limit this testimony. We think any charge or attempt to limit the effect of such testimony would have tended to confuse rather than to enlighten the jury. We agree with the admirable brief of the Assistant Attorney-General, wherein he says: "We are constrained to believe that the complaint is without merit; that the proof shows beyond question and beyond doubt that this appellant is guilty of a most terrible crime, and not only that human life but virtue would be in danger with such men living; that both justice and humanity demanded the verdict which was returned in this case, and that the verdict inflicted the righteous demands of the law, and that the appellant should suffer for the consequences of his terrible crime." It probably should be further stated in this connection that the proof showed that at the time when prosecutrix made what was thought to be her dying statement, that she was in a condition of collapse, great nervousness and mental strain. If the language contained in it can be construed to locate the point of actual rape at a different place than that· stated in her testimony, it is easy to be understood ·how the amanuensis taking the statement could have misunderstood her, or in her terrible embarrassment and mental strain she might herself have confused these events. We think that the case has been well tried; that the evidence sustains the verdict, and there is no reason or ground assigned why the judgment of conviction should be reversed. It is therefore ordered that the judgment be and the same is hereby in all things affirmed.

*Affirmed.*

### ON REHEARING.

#### March 17, 1909.

RAMSEY, JUDGE.—The able counsel, who represented appellant without reward and through the appointment of the court, have filed herein a vigorous and able motion for rehearing. We think this

motion without merit, but in deference to the earnest contention of counsel we deem it appropriate to treat same at some length.

The suggestion is made that the opinion filed herein contains by implication some reflection upon counsel and implies the charge that they were negligent in not securing the affidavits of the missing witnesses. This is not, we believe, a fair inference from any statement in the opinion. In the explanation of the court approving the bill of exceptions it is recited that counsel employed in the case had, on account of the fact that his fee had not been arranged, withdrawn from it; and whereupon the court appointed the present counsel of appellant to represent him; that after the State announced ready for trial they presented an oral application for continuance, which by agreement was to be reduced to writing and stated that they *understood* Ecifro Castro had two boys who *might* know what time the defendant went to Castro's house. This application was made when the case was called for trial, which was on the 14th day of December. The amended motion for new trial was filed on the 19th day of December, 1908. The court adjourned on the twenty-second day of the same month. In view of the fact that the application was not presented until the case was called for trial, and that the court did not adjourn until eight days thereafter, it occurs to us that it was a matter of some consequence that no affidavit of these witnesses had been attached to the motion for new trial; and particularly so in view of the fact that, as appears by the explanation of the trial court, it was a matter of belief and opinion only as to whether the witnesses named would have given the testimony expected of them. It will be noted further that the indictment was returned into court on the 7th of December, and that no effort was made to secure the attendance of these witnesses until the case was called for trial. So that we think it a fair statement to say that the diligence, both before and after trial, was scarcely of that character that might reasonably be expected. Whatever may be thought of this question, it is to our minds settled beyond doubt that this testimony, if the witnesses would have so sworn, is not of such a character, in the light of all the facts, as to have required the court to grant a continuance. It will be noted that it is stated that these witnesses would testify that appellant got to their house *about* 8 or 9 o'clock. He admits being at home and near the scene of the crime about sundown. It was a distance of only four or five miles from the point fixed by the prosecuting witness. The assault occurred just before sundown. It was easily possible for appellant to have been at the place stated by those witnesses at 9 o'clock, and yet have been the person who committed the offense charged. It is further consistent with the State's contention that appellant was at the places designated in that application, and yet have committed the offense charged. The alibi sought to be proved by these witnesses does not combat the State's case sufficiently to render this proof inconsistent

with the facts stated by the prosecuting witness. It is strangely significant, too, that appellant neither denied nor seeks to explain, while testifying, that the knife identified as his did not in fact belong to him or account for its presence, as the weapon inflicting the wounds upon this young girl. This certainly, in the absence of explanation so irrevocably plants him on the scene as to make his presence unquestioned and unquestionable. There is no hint in his testimony that this knife was or had recently been in the possession of any other person so as to relieve him of the charge of using it on her body, nor does he account for its presence in the person of this girl. The continuance was, we think, correctly overruled in .the first instance and in the light of all the evidence viewing the situation fairly, was not of sufficient cogency to require the court to grant a new trial.

We carefully reviewed the facts and the record on the original submission, and it seems to us clear not only that there is no error in the record, but that appellant's guilt is shown substantially beyond doubt or controversy. It is therefore ordered that the motion for rehearing be and the same is hereby overruled.

*Overruled.*