A. H. BEASLEY v. THE STATE.

No. 12452. Delivered March 13, 1929.
Rehearing granted June 27, 1929.

The opinion states the case.

*C. C. McDonald* and *B. Y. Cummings* of Wichita Falls, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for possession intoxicating liquor for purposes of sale; punishment, one year in the penitentiary.

The sheriff of Cottle county, Texas, observed appellant's actions about noon on June 7, 1928, saw him get into his car and start away. The officer followed him, stopped him, talked to him, arrested him, made complaint against him, took his bond, and then went with appellant to the sheriff's garage where a number of kegs of whisky were unloaded from appellant's car. The sheriff was corroborated in his testimony as to the removal of said kegs from appellant's car at said garage by Mr. Wood, a brother-in-law of the sheriff, who was present at the occurrence. Appellant denied having such kegs, or that the same were unloaded from his car, and by a number of people who knew him before he went to live in Wichita Falls some ten or twelve years ago, he proved that when they knew him he bore a good reputation. No witnesses from Wichita Falls testified as to appellant's reputation since he moved there.

Appellant sought a continuance based on the absence of his wife and one Shubert, by whom he expected to prove that when he left Childress, Texas, about 8 A. M. on the day he was arrested in Paducah, Cottle county, Texas, he had no whisky in his car; said application is also based on the absence of one Sayers by whom appellant expected to show that some fifteen minutes before his arrest said Sayers looked at his car inside and out with a view of buying same, and would testify that it then contained no whisky. Appellant was arrested on that same day, and the indictment was

returned October 11, 1928, and subpoenas issued for Mrs. Beasley and Sayers on October 15th. The return on the process for Sayers stated that he was out of the county. No effort of any kind was made to show where he was, or that he would return, nor was any affidavit of said witness procured, though the court did not adjourn for several days after the motion for new trial was overruled. No showing is made as to whether Shubert was ever served with process, or what became of the process, if any, issued for him. A very vague and general affidavit of a doctor in Wichita Falls to the effect that appellant's wife was under his care and observation and would not be able to leave Wichita Falls for thirty days, was offered as explaining the absence of appellant's wife.

We think no abuse of the discretion of the trial court appears in the refusal of this continuance, or the subsequent overruling of the motion for new trial. Appellant was not charged with the transportation of whisky from Childress to Paducah, but with possession of whisky in Paducah. There was no proof by the State that he had any whisky in his possession at any other place save in Paducah. When found in possession of same he told the sheriff, according to the officer, that he was carrying it to Lubbock. We find in the record the testimony of Finley and Worley which seems effectually to show that appellant had no whisky in his car when he came to Paducah on the occasion in question. It is well settled in this State,—admitting that the testimony expected of the absent witnesses may be true, yet if same be not in conflict with the State's testimony going to establish the guilt of the accused, a motion for continuance will be properly overruled. Abrigo v. State, 29 Texas Crim. App. 146; Underwood v. State, 38 Texas Crim. Rep. 196; Turman v. State, 50 Texas Crim. Rep. 9; Jaureque v. State, 55 Texas Crim. Rep. 223; Bussey v. State, 59 Texas Crim. Rep. 260. Finley and Worley had occasion to see in appellant's car some miles before he got to Paducah and both swore that he had no whisky at that time. Neither this testimony nor that expected from Mrs. Beasley to the effect that he had no whisky in the car when he left Childress at 8 A. M. that day, is deemed at all in conflict with the testimony of Sheriff Payne that when he arrested appellant in Paducah the latter at first denied having any liquor in his car, and when the officer threatened to open the back of the car appellant said he did have a quantity of liquor there which he was going to take to Lubbock, and further that after he made bond five kegs of whisky were unloaded from appellant's car in the presence of Sheriff Payne and Mr. Wood. We

deem the refusal of the continuance under these circumstances not erroneous.

The case is not on circumstantial evidence. The statements of appellant made to the sheriff were res gestae. He was then in possession of the whisky in his car and was committing a felony, and the fact that he was under arrest, actual or threatened, would not be reason for rejecting his res gestae statements. The kegs found in appellant's car contained whisky, a known intoxicant. We have examined each of the special charges, refusal of which is complained of, and think no error appears in such refusal.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING

HAWKINS, JUDGE—In sustaining the action of the trial court in denying appellant's application for continuance we predicated our original opinion on the proposition that, admitting the testimony of the absent witness to be true, it was not in conflict with the state's testimony which went to establish appellant's guilt. In his motion for rehearing appellant very frankly admits the proposition stated as being correct and supported by the authorities cited, and that it is applicable to all the witnesses for whom continuance was sought except the witness Jess Sayers, but as to him the contention is urged that our opinion is erroneous. We believe his contention is correct. There was no lack of diligence in appellant's efforts to secure the attendance of Sayers. Process for him was timely issued and the sheriff's return shows that the witness was then out of the county, but did not give his location. The application for continuance was overruled on the 29th day of October. Judgment of conviction was obtained the same day also on that same date motion for new trial was overruled. Court adjourned on the fourth day thereafter. The testimony of the sheriff and his brother-in-law, Woods, is in direct conflict with that given by appellant. Does the proposed evidence of Sayers support appellant and bear on the conflicting issue? If it does then the court should have granted a new trial based upon the erroneous action in denying the continuance. The sheriff says he saw appellant in Paducah on the day of the arrest and saw him leave town in his car about noon. No effort was made to arrest appellant while he was in town. The sheriff followed and overtook him about two miles from town. From this point the evi-

dence of the officer and appellant is irreconcilable. The sheriff testified as follows:

"I told him I wanted to look his car over, and he said, 'Well, I don't have anything,' told me his business, what he was selling and showed me his sample book or order books, or something like that, and I asked him to let me look in the back end of the car, and he said it was locked, and I asked him if he had a key and he said he did not, and I talked on with him awhile and told him I would have to go ahead and pull it open, that I would have to look in it, and he wanted to know if some one had notified me to be on the lookout for him and I told him they had and he says, 'Well, I have some stuff in there,' and asked me about taking part of it and letting him keep part of it, or take all of it and let him go—let him pay a fine and let him go, so I told him I would not do that, and told him to get in his car and I got in mine and come back to town. He drove his car himself, and drove it into my garage out there, and he got out and took out the key and unlocked the back end and helped me unload the whisky. He drove the car into the garage there and then got in the car with me and come to town and fixed his bond, and then he went back and unloaded the whiskey out of his car into mine. I think he had five kegs something like that. I think he said they held six gallons that they were five or six gallon kegs, I disremember now which. There were five of these kegs I think. They all contained whiskey, and were full. * * * At the time I first had the conversation out there at the defendant's car he told me he did not have anything in the car, and then he told me he did have, and told me what the stuff was—told me that it was whiskey. He said he was carrying this to Lubbock, and further stated that he had not sold any in this county."

The sheriff's testimony was unsupported by any witness except that of Mr. Woods, the sheriff's brother-in-law, testified that he saw appellant and the sheriff transferring five kegs from appellant's car to the sheriff's car, that he asked no questions and did not know whether the kegs contained whiskey, but that he smelled whiskey. The testimony of appellant with reference to the transaction follows:

"When I got to town that morning I parked my car just a block west of the square, west of the northwest corner of the square at a filling station. When I got out of the car there, I talked with Jess Sayers, who has also been summoned as a witness. I had a conversation there with Jess Sayers about selling him my automobile. He was in the market for a car at that time, and I tried to sell him

mine. He got in the car, examined it inside and out, front and rear, and there was no intoxicating liquor of any kind or character, in any quantity in the car at that time. I saw Mr. Payne here in town that morning. I met him on the street just a little north of Ester Campbell's barber shop. He did not arrest me then, nor did he say anything about arresting me. After I saw him I started west—first north and then west to my car. There was nothing in the car then at all. There was no intoxicating liquor in the car. After I left the sheriff I don't suppose it was more than fifteen or twenty minutes before he stopped me out here on the road. Between the time I saw the sheriff here in town on the north side of the square and the time he stopped me out here on the road, there had been no liquor of any kind or character put in my car. When the sheriff drove up out there he said to consider myself under arrest and to get out of my car and I did—he pulled his gun, and I told him he did not need his gun. He said we will have to look you over and I told him alright help your-self, and he looked in the car, and says have you got a key for the back end, and I said yes, and he asked if it was locked and I said yes, and he says will you give me the key to it or will I have to search you for it. He did not search me for the key. I gave it to him. He did not have any search warrant, if he did he did not show any. He searched the car right there on the road. I let him have permis-sion to do anything he wanted to. He demanded the key of me. He did not find anything in the car at that time. There was no intoxicating liquor of any kind or character in that car or in any quantity. He told me then to get back in my car and drive back to town. He told me to drive in his garage there at his house. I saw something in this garage. I saw some kegs there. I do not know whether they were empty or full, and I did not ask any questions. None of them come out of my car. I never helped unload any from my car. I left my car there in the garage and then he brought me on to town to make bond he said. I made a $750 bond, and said he was charging me with having liquor. There wasn't very much else said. I made the bond and he turned me loose just a few minutes after twelve o'clock. We went back up to his garage and I got in my car and left. * * * I say I had no whiskey or intoxicating liquor in my car at the time Mr. Payne arrested me. I did not tell Mr. Payne that I was on my way to Lubbock. It is not a fact in the conversation with him out there on the road that I told Mr. Payne that I did not have the key to the back end of the car. He took the key himself and unlocked it. I had the key in my pocket, but I never

told him I didn't have it. It is not true that I further told him I had some stuff in there before he found it in the car, nor did I try to get him just to take part of it and let me keep part of it, nor did I tell him there that I had never sold any in this county. I did not tell him any of the things he has testified that I told him out there on the road. It is not a fact that I had five kegs of whiskey in my car and was headed for Lubbock like he says—I had no whiskey in my car, and had not had any in it at all."

In his application for continuance appellant makes the following averments:

"By the witness Jess Sayers, the defendant expects to prove that about fifteen minutes before this arrest and within about two miles of the scene of his arrest on the streets of Paducah defendant stated to said witness that he wanted to sell him his said car, an Essex roadster, that the said witness Jess Sayers looked over said car, and opened it up, and looked in the back of said car and examined said car carefully inside and out, but that he and the defendant failed to get together on the price, and the sale was not consummated, and that at said time and place defendant had no kind or quantity of whiskey in said car. In this connection the defendant will testify that immediately after he and Jess Sayers separated on the streets of Paducah, that defendant got in his car, an Essex Coupe, and started to visit his sister as above alleged, and never made any stop of any kind or character until he was arrested on the road by the sheriff some ten minutes thereafter, and that at no time on said date did he have in his possession or in his car, any kind or quantity of whiskey, or intoxicating liquors, and each of said above named absent witnesses will testify that at the time they inspected defendant's car on said occasion, he had no kind or quantity of any character of intoxicating liquor."

In his application for continuance appellant put the state upon notice and advised the court that the issue whether appellant had whiskey in his car would be sharply contested; that appellant would put his general reputation in issue, which he did and supported it by many witnesses, with no proof to the contrary.

Denial of first application for continuance for an absent witness whose presence has been sought by the use of proper diligence, is erroneous where the expected testimony would contradict the state's theory, or would support accused's contention. McLendon v. State, 101 Tex. Cr. R. 427, 275 S. W. 1045; Long v. State, 102 Tex. Cr. R. 81, 277 S. W. 139; King v. State, 103 Tex. Cr. R. 679, 282 S. W. 220; Ray v. State, 102 Tex. Cr. R. 421, 278 S. W. 197. For

collation of other authorities see Branch's Ann. Tex. P. C., Sec. 335. Appellant was standing alone in his evidence against that of an officer of the county. Where continuance is sought to secure testimony to support the evidence of accused alone it should at least be as favorably regarded as where absent testimony is sought to support the testimony of a disinterested witness. Keller v. State, 36 Tex. Cr. R. 499, 38 S. W. 44; Rucker v. State, 40 S. W. 991; Askew v. State, 47 Tex. Cr. R. 362, 83 S. W. 707; Beard v. State, 55 Tex. Cr. R. 154, 115 S. W. 592; Taylor v. State, 164 S. W. 844. The expected evidence of Sayers was the only testimony near enough in point of time and location to have been of any material support to appellant's own evidence. That it bore directly on the issue whether appellant's car did or did not contain whiskey at the time of his arrest seems obvious. Sayers was not a myth. The sheriff appears to have known him. What the result of the trial may have been had Sayers been present and given the testimony expected is open to speculation.' We think the jury should not have been deprived of his evidence.

Believing we were in error in our former disposition of the case appellant's motion for rehearing is granted, the judgment of affirmance is set aside and the judgment is now reversed and the cause remanded.

*Reversed and remanded.*

### DISSENTING OPINION ON MOTION FOR REHEARING

LATTIMORE, Judge.—Appellant moves for a rehearing because of the absence of Jess Sayers, for which cause an application for continuance was made. The appellant was arrested in June 1928 for the offense herein alleged to have been committed, was indicted on October 11, 1928, and on October 15th of said year caused a subpoena to be issued for said Sayers. When the same was returned nowhere appears in this record. Sayers was not served. The case was tried on October 29, 1928, at which time the application for continuance was made and overruled. Examining same we observe that appellant swore therein that about fifteen minutes before his arrest by the sheriff for the alleged possession of five kegs of whisky in his car, that Sayers looked over said car, opened it up, looked in the back carefully and there was no kind or quantity of whisky in said car. The application further states that immediately afterward appellant and Sayers separated and appellant got in his car and without stop of any kind drove to where he was arrested by the sheriff some ten minutes thereafter.

On the trial of the case the sheriff of the county testified that in the forenoon of June 7th and just before dinner he arrested appellant about two miles from Paducah with five kegs of whisky in the back of his car. He said that during the morning before this he had seen appellant on foot in Paducah on the street west of the square, at which time appellant went north to the street leading west and up that street. Appellant took the witness stand and swore that when he got to Paducah on the morning of June 7th he parked his car a block west of the square at a filling station. He further said: "When I got out of the car there, I talked with Jess Sayers," and further testified that he tried to sell Sayers his car; that Sayers examined the car and that there was no liquor in it. Appellant further testified that he met the sheriff that morning on the street a little north of Campbell's barber shop, and the sheriff did not then arrest him or say anything about arresting him. He further swore: "After I saw him I started west,—first north and then west *to my car.*" These facts are now set out as in line with and support of the proposition advanced in the original opinion, viz: that the State made no claim that appellant had whisky in his car when he got to Paducah on the morning of June 7th, the day on which he was later arrested on the Lubbock road some two miles from Paducah with five kegs of whisky in his car. Appellant produced Finley and Worley who testified for him that they saw in his car at a point three miles from Paducah as he came toward the town that morning, and that he had no whisky in his car. His complaint now is of the refusal of the trial court to continue the case to get Sayers, who would swear that he looked in appellant's car in Paducah at once upon appellant's arrival at said town and saw no whisky. It is not stated in the application for continuance that Sayers would testify that at once after he examined the car, appellant got in it and drove off on his way to Lubbock. In fact and in the light of the testimony of appellant himself, it is plain that if Sayers did look in the car at all, it was at once upon appellant's arrival at the town of Paducah. As substantially stated in our former opinion,—testimony that appellant had no whisky in his car three miles from Paducah as he came in that morning, and that he had none when he first got to said town at the time when he testified Sayers looked in his car,—would in no real sense conflict with testimony of Sheriff Payne that when he arrested appellant about noon two miles from Paducah the latter had kegs of whisky in his car. Nor would such testimony conflict with that of Mr. Woods who testified when he went home to dinner on

the day in question he saw Sheriff Payne and appellant drive up and take five kegs out of appellant's car.

The matters in the application for continuance were for the trial court to consider in the light of the facts developed on the trial of the case. No process for Sayers was asked after the subpoena issued on October 15th. The burden was on appellant to show diligence.

Neither from the standpoint of diligence nor materiality of the absent testimony can this court conclude a trial court in error in refusing the motion for new trial based in part on the overruling of the application for continuance, unless there appear affirmative error. Unless we believed the discretion of the learned trial judge in such matters abused, we should not reverse. I am unable to bring myself to believe there was such abuse, and respectfully dissent.