### Joe Morgan v. The State.

#### No. 3997.  Decided November 18, 1908.

**1.—Murder—Continuance—Insult of Female Relative—Threats.**

Where upon trial for murder, on defendant's second application for continuance, it was shown that he proposed to prove by the absent witness that on the night before the alleged homicide the deceased was discovered in the room of defendant's sister, and that immediately before the killing the absent witness told defendant that deceased had been having carnal intercourse with said sister, and that deceased had threatened to kill defendant; the defendant

and his sister both being the children of the absent witness and of tender years; that defendant was the oldest son and 16 years of age, etc., the continuance should have been granted not on the issue of manslaughter but to strengthen defendant's plea of self-defense, and this although defendant testified that said threats were communicated to him, by the absent witness before the first difficulty which led to the homicide.

### 2.—Same—Statutes Construed.

The clause of the statute in reference to continuances, "that the testimony can not be procured from any other source known to the defendant" has no relation to cases where testimony is sought of facts which rest alone in the breast of the absent witness and the defendant himself; this ̂lause relates to the testimony of some other person than defendant himself.

### 3.—Same—Probable Truth of Absent Testimony.

Where upon trial for murder the testimony of a witness who testified upon trial lent strong probability to the theory that the testimony of the absent witness was probably true, the court could not deny the defendant the right to have his case passed upon by the jury in the light of said absent testimony, although he testified to the same facts.

### 4.—Same—Evidence—Dying Declarations.

The rule is universal that before dying declarations can be admitted in evidence it is essential, and is a preliminary fact to be proved by the party offering them in evidence, that they were made under a sense of impending death, but it is not necessary that they should be stated at the time, to be so made. It is enough, if it satisfactorily appears in any manner, that they were made under that sanction.

### 5.—Same—Case Stated.

Where upon trial for murder the evidence showed that the wound on deceased was a horrible one; that he had lain for more than an hour in the wagon where he was shot; that upon arrival of the physician he was told that he could not live and that he was going to die and if he had any statement to make to make it; and that thereupon without dissent or suggestion that he believed himself other than in a dying condition made the statement offered in evidence there was no error.

Appeal from the District Court of Madison. Tried below before the Hon. Gordon Boone.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*E. A. Berry,* for appellant.—On question for continuance: Gilcrease v. State, 33 Texas Crim. Rep., 619; Wilson v. State, 18 Texas Crim. App., 576; Nimon v. State, 17 Texas Crim. App., 650; Phipps v. State, 34 Texas Crim. Rep., 560. On question of admitting dying declaration: Sims v. State, 36 Texas Crim. Rep., 154; Pierson v. State, 21 Texas Crim. App., 14.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of dying declaration. Miller v. State, 27 Texas Crim. App., 63; Fulcher v. State, 28 Texas Crim. App., 465; Fulcher v. State, 38 Texas Crim. Rep., 465; Vinson v. State, 38 Texas Crim. Rep., 487; Lindsey v. State, 35 Texas Crim. Rep., 164; Lewis v. State, 29 Texas Crim. App., 201.

RAMSEY, Judge.—Appellant was indicted in the District Court of Madison County, charged with the murder of one John B. Williams, which is alleged to have been committed on or about April 26, 1907. On trial he was convicted of manslaughter and his punishment assessed at confinement in the penitentiary for a term of two years.

Appellant submits three assignments and propositions on which he relied for a reversal. First, the court erred in overruling his application for a continuance. Second, the misconduct of two members of the jury trying him, and third, that the court erred in admitting the testimony of Dr. J. E. Morris as to the dying declarations of the deceased. We think the court erred in overruling appellant's application for a continuance. In view of the fact that the case is to be reversed, it becomes unnecessary to discuss the assignments of error in respect to the supposed misconduct of the jurors named. Again, we think there was no error in the action of the court in overruling the objection to the testimony of Dr. Morris. In view of the importance of the issues raised and the fact that a correct statement of the law may in future become important, we shall discuss at length the first and third errors assigned. Briefly stated the evidence of the State tended to show that the appellant and deceased had become involved in a difficulty on the morning of the homicide and a few hours before the killing in which deceased struck appellant on the head with a stick inflicting a painful gash thereon, and that the parties were found contending and wrestling over the stick and caused to separate and abandon the difficulty. Some two or three hours after this while deceased was traveling in a wagon without any warning of any kind and while he was unaware of the approach of appellant, appellant shot and killed deceased. At this time deceased was making no demonstration of any character indicating any intention to harm appellant and in fact, did not see appellant at the time of the homicide until the fatal shot was fired. The testimony offered by appellant tended to show that he was going to work on the morning in question and was attacked by deceased on the pretext of trying to collect 30 cents from him which he declined to pay and was struck two severe blows on the head by deceased from which he suffered both great pain and much bloodshed. That deceased prior to the time of the homicide had made threats to take the life of appellant, had been guilty of improper conduct towards his young sister, had cursed his mother and that these threats and this misconduct of deceased had been conveyed to him a very short while before the fatal encounter. That after deceased had assaulted him on the morning before the fatal meeting, he went to his home, procured a gun and as deceased was passing by the house he came out to demand of him an explanation in regard to the misconduct towards his sister and his mother and himself, and upon being accosted

for the purpose of procuring an explanation of such misconduct, deceased cursed appellant, threatened to kill him, and made a demonstration as if to get a gun from the wagon in which he was riding and that he, believing from the words, acts and conduct of the deceased and that he was in the very act of carrying into execution the threats made by him to take his life and while deceased was in the very act of putting such acts into execution, appellant shot and killed him in his own self-defense.

1. When the case was called for trial appellant made an application for a continuance based on the absence and for the lack of the testimony of his mother, Sue Morgan. The diligence to secure the testimony of his mother was perfect, was unattacked in the court below and was unquestionably sufficient and does not need to be stated. After stating the diligence used to procure the attendance of said witness, the application is as follows: "The defendant shows that he proposes to prove by said witness that on the night before the alleged homicide was committed that the deceased was discovered in the room of the sister of the defendant and when accosted by the defendant ran from the house of defendant. That immediately before the killing witness told defendant that deceased had been having intercourse with the sister of defendant and that immediately before the killing she told him that deceased had threatened to kill him. That the defendant and his sister are both the children of the witness and he expects to prove by witness that at the time of the killing defendant was only 16 years old and that his sister with whom deceased is alleged to have had intercourse was only 11 years old at that time.

"Defendant further shows that immediately before the killing of deceased, he (deceased) had raised a row with him and had struck him with a stick and had inflicted upon him serious bodily injury and that the occasion for deceased striking him was pretended to be on account of 30 cents that deceased claimed that he owed him, but in fact the defendant alleges that it was caused by a desire on the part of the deceased to kill him in order that he might have free access to defendant's sister. And in this connection defendant proposed to prove by witness that defendant was her oldest boy and attended to her business for her and that at the time that deceased raised a row and claimed that defendant owed him 30 cents that deceased owed her 45 cents for washing which money the defendant was authorized to collect and offset against anything that defendant owed deceased. That all of such facts are material." The application contains all the statutory requirements. After trial and conviction appellant urged the failure of the court to grant his continuance as ground for a new trial. This was by the court overruled. The grounds of the action of

the court in overruling the motion for a new trial in respect to the matter of continuance are thus stated in a judgment which accompanies and forms a part of the transcript: "Because the court is of the opinion that the rights of the defendant were not prejudiced by the refusal of his second application for a continuance to procure the testimony of his mother, Sue Morgan, in that the record of this case shows that the testimony of said witness was merely cumulative of other evidence in the case, for that the witness Frank Webber for the defendant, testified, as fully appears from the record, that the deceased had threatened the life of the defendant and that said witness had so informed the mother of the defendant aforesaid, prior to the first difficulty and the defendant on the witness stand in his own behalf, testified, as fully appears from the record, that his said mother communicated said threats to him prior to the first difficulty. Said evidence was in no way controverted by the State and went to the jury uncontradicted, and in addition to such testimony the defendant also testified that at the time of the first difficulty the deceased threatened his life, all of which fully appears from the record, all of which was by the court fairly submitted to the jury and for the further reason, as fully appears from the record, that the defendant was evidently acting under the immediate influence of sudden passion produced by the assault and battery committed upon him by deceased in the first difficulty and the jury having found the defendant guilty of manslaughter, and the jury having before it the evidence of threats made and communicated as shown by the record uncontradicted by the State, it does not appear to the court that the testimony of the said Sue Morgan could reasonably have had any other effect than that of the uncontradicted testimony of the witness Webber and the defendant on said issue." It will be noted by reference to the statement of the court that it is not claimed that the testimony of the witness Webber went to the extent that he had communicated the threats in question to appellant. Nor indeed that there was testimony of communicated threats by any person other than appellant. It is clear, as stated by the court, that if the testimony of his mother related only to the subject of the misconduct of the deceased with his sister there could be no just reason for reversing the case on account of the absence of this testimony because, having been convicted of manslaughter only, and having received the lowest punishment known to the law, if the killing was unlawful, the production of any amount of testimony as to insulting conduct or words towards his sister, could not reduce the offense below the grade found by the jury and the absent testimony therefore, could not have changed the result. But it is to be noted that it was proposed to be proved by the missing witness that she had, a short time before the fatal difficulty, in person com-

municated the threats made to Webber to the appellant. The fact that Webber testifies he had made a statement of these threats to Sue Morgan would seem to rebut any suggestion that she would not, if present, testify to the facts stated as well as any suggestion that such testimony was probably untrue. Appellant claimed that he acted in self-defense. On this issue, proof of communicated threats was of the highest importance. What weight the jury would have given to this testimony if produced we can not say, nor do we believe that the court below was justified, or that we would be justified in holding that such testimony should be treated as immaterial. The rule ordinarily is that a second or subsequent application for continuance will not be granted for testimony which would be only cumulative. Harvey v. State, 35 Texas Crim. Rep., 545. This rule, however, is subject, as our decisions have declared, to an exception where the testimony sought by the continuance is cumulative of that of the appellant. In the case of Phipps v. State, 34 Texas Crim. Rep., 560, which was a case of murder, the conviction was reversed in part on account of the failure of the court to grant a second application for a continuance. In that case, as in this, self-defense was claimed. The appellant there testified to certain demonstrations and conduct on the part of the deceased from which an inference of his threatened attack, might, if believed, be drawn. It was averred in the application for a continuance that Phipps could prove by the absent witness Bob Linebarger that defendant had ordered deceased out of his house the third time and that immediately thereafter deceased leaned his body forward and moved his right hand towards his hip pocket as if to reach for a pistol. Passing on this case, the court, speaking through Judge Davidson, says: "In our opinion, the diligence shown was sufficient, and, under the circumstances of this case, the evidence was very material. It is true, if we refer to the statement of facts, that several of the witnesses say that they did not see Linebarger there, but it appears that all the time there was a great deal of excitement, that there were a number of persons in the store, and that they all immediately ran out when the difficulty began. So we see nothing unreasonable in the statement that Linebarger was there, and may have seen what was alleged. As stated before, all of the witnesses who were in the store when the difficulty began ran out, and evidently much of what they saw occurred while they were in the act of running, and while they were outside of the store, and getting out of the way. The only witness who testifies to these particular demonstrations is the defendant himself, and the jury might not be disposed to lend credit to his statement, though it is not gainsaid by other witnesses, except in a negative way; and, if this testimony was calculated to corroborate the statement of the defendant himself, under the circumstances of this case, it certainly would have

been very valuable to him, and the court should have awarded him an opportunity to procure same by continuing the cause until next term of the court." In the case of Gilcrease v. State, 33 Texas Crim. Rep., 619, in passing on an application for continuance, Judge Hurt says: "An application to continue was made for the want of testimony of the witnesses to prove threats made by the deceased to kill defendant, which were communicated to him; also, to prove that deceased, as well as his brother, had guns at the place and time of the shooting. The theory of the State was that appellant, unprovoked, killed the deceased; that of the defendant was self-defense. Both theories were supported by testimony; hence a conflict in the testimony as to who was the aggressor—who began the violence. Threats, whether communicated or not, in such a conflict, are of very great importance, as they tend to solve the problem at issue. The State's witnesses deny that the deceased was armed with a gun at the time he was shot. If this be true, appellant was in no actual danger when he shot deceased, and self-defense was not in the case. The application should have been granted, although it was the second application; and, after the trial, the court, viewing the facts of case as developed on the trial, should have granted a new trial to have enabled the appellant to obtain the testimony, though it was somewhat cumulative." In the case of Casey v. State, 51 Texas Crim. Rep., 433, it was held that a continuance should have been granted to prove threats made by deceased. In that case, as in this, the appellant was the sole eyewitness in his own behalf to the conflict out of which the killing resulted. In that case Judge Henderson, speaking for the court, uses this language: "We also believe the testimony of Sam Casey would have been material as showing the previous threat of deceased, and tending to corroborate appellant's evidence as to deceased being the aggressor in the difficulty. Notwithstanding the diligence of appellant was not complete, in that he did not begin his diligence in time, still we believe that the court should have continued the case, or have granted a new trial, after conviction on account of the absence of said witnesses." We do not believe that that clause of the statute in reference to continuances, "That the testimony can not be procured from any other source known to the defendant" has any relation to cases where testimony is sought to facts which rest alone in the breast of the absent witness and the defendant himself. The clause quoted above had been the law for many years before the Legislature authorized appellants to testify in criminal cases in their own behalf. This last named statute was passed on April 4, 1889; whereas, the provision of the law in respect to continuances had been passed very many years before that date. Besides, the language of the quoted article, "can not be procured from any other source *known to the defendant,* is absurd and meaning-

less, if it applies to a case where the testimony sought can be established by the defendant himself, because it will be presumed in every case that if he knew the fact himself that any testimony sought by him could be proven by his own testimony. It is obvious, therefore, we think, that the clause quoted, "can not be procured from any other source known to the defendant," relates to the testimony of some other person than himself. We think the following contention of appellant in his argument is unanswerable: "This rule is based on the common sense and judicially known proposition that juries do not lend much credit to a defendant's statement in his own behalf, and upon the very just and humane theory that the defendant is entitled to the best evidence he can procure to establish his defense. If it were the rule that when a defendant testifies to a fact that this estopped him from calling other witnesses to the same fact we should have the absurd anomaly of the jury saying we will not believe the defendant, and the law saying that the defendant shall be limited to his own testimony. This would, in effect, prohibit the defendant from testifying in his own behalf." It would also compel him, in order to avail himself of proof of the fact known to the absent witness, in every case to become a witness in his own behalf. As stated, the testimony of Frank Webber lends strong probability that the testimony of Sue Morgan was probably true. We could not, therefore, if we are correct in our conclusions above expressed, hold otherwise than that the court was in error in overruling this application for continuance, except upon the presumption and theory that the jury would not have believed or applied this testimony on the issue of self-defense. For us to hold this is to make this court the arbiter of the facts and deny to appellant the right to have his case passed on by the jury in the light of all admissible testimony.

2. As stated above, complaint is made that the court erred in admitting the testimony of Dr. J. E. Morris as to the alleged dying declarations of the deceased and the proposition is submitted that "a statement made by the injured party can not be admitted as a dying declaration unless among other things it appears from the evidence that he is fully conscious of the immediate approach of death and has no hope of recovery; and such consciousness can not be presumed from the mere fact that a physician has told him that he is going to die." In this case it appears that the statement in question was made to the witness named. He testified in substance that he arrived at the place where deceased was lying in the wagon and undressed him, found that there was nothing to be done for him and moved him in the room and put him on the bed so that he could be made as comfortable as possible. That he then examined the wound thoroughly and saw there was not anything to be done and that the wound was fatal. That after such examination

he told deceased that there was not anything he could do for him and that he was going to die and that there was not any cure for him, and that he told him then that "knowing he was going to die that if he had any statement to make for him to make it and tell me who shot him and he said Joe Morgan shot him; that he and Clem Webber were riding in a wagon and a gun fired and he fell, and after he raised up to look he saw Joe Morgan standing at the back of the wagon." The rule is universal that before dying declarations can be admitted in evidence it is essential and is a preliminary fact to be proved by the party offering them in evidence that they were made under a sense of impending death, but Mr. Greenleaf says, section 158, it is not necessary that they should be stated, at the time, to be so made. It is enough, if it satisfactorily appears, *in any mode,* that they were made under that sanction; whether it be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants, stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to, in order to ascertain the state of the declarant's mind. We think, tested by this rule, that it is placed beyond doubt that this young negro boy, when he made the declarations in question, must have done so under a sense of impending death. The wound, as the evidence discloses, was a horrible one. He had lain for more than an hour in the wagon where he was shot. On the arrival of the physician he was told that he could not live; that nothing could be done for him and that knowing he was going to die if he had any statement to make for him to make it. Immediately following this without any dissent or suggestion that he believed himself to be other than in a dying condition he makes the statement offered in evidence. We think there can be no doubt that this was a sufficient predicate under the authorities.

For the error noted above the judgment is reversed and the cause remanded.

*Reversed and remanded.*