## J. W. DAY v. THE STATE.

### No. 1205.   Decided May 24, 1911.

**1.—Assault to Murder—Assignments of Error—Practice on Appeal.**

Assignments of error can not be considered upon appeal, and the unvarying rule is that nothing that is not presented in the motion for new trial will be reviewed. Following Harvey v. State, 57 Texas Crim. Rep., 7, and other cases.

**2.—Same—Continuance—Want of Diligence—Materiality of Testimony.**

Where, upon trial of assault with intent to murder, it became a material issue whether the prosecuting witness had his gun leveled at the defendant at the time the defendant shot at him with a shotgun, and that the absent testimony would show that the prosecutor's gun received a shot in the breach, the same was material testimony, and a new trial should have been granted, although the diligence was insufficient, the defendant claiming surprise.

**3.—Same—Evidence—Declarations of Third Parties.**

Upon trial of assault to murder it was error to admit testimony that witness and defendant's son were running from the grand jury, there being no testimony that defendant aided or induced them to avoid going before the grand jury.

**4.—Same—Evidence—Intimidating Witness.**

Upon trial of assault to murder, testimony that the witness was threatened by the defendant to induce the witness to make a certain statement in his favor was admissible, but testimony that the witness made a complaint against defendant for such threat, etc., was inadmissible.

**5.—Same—Evidence—Other Transactions.**

Upon trial of assault to murder, testimony that defendant made another assault on a third party not connected with the assault, for which he was being tried, was inadmissible.

Appeal from the District Court of Denton.    Tried below before the Hon. Clem B. Potter.

Appeal from a conviction of aggravated assault; penalty, a fine of one thousand dollars and two years confinement in the county jail.

The opinion states the case.

*Owsley & Sullivan* and *Emory C. Smith,* for appellant.—Upon question of admitting evidence of other transactions:  Galbraith v. State, 41 Texas, 567; Wilburn v. State, id., 237; Fore v. State, 5 Texas Crim. App., 251; Williamson v. State, 13 Texas Crim. App., 514; Green v. State, 12 Texas Crim. App., 51; Windham v. State, 128 S. W. Rep., 1130; Welhousen v. State, 30 Texas Crim. App., 623; Bluman v. State, 33 Texas Crim. Rep., 43; Barth v. State, 39 Texas Crim. Rep., 381; McCandless v. State, 42 Texas Crim. Rep., 58, 57 S. W. Rep., 672; Cogdell v. State, 43 Texas Crim. Rep., 178, 63 S. W. Rep., 645.

*C. E. Lane,* Assistant Attorney-General, and *Chas. Mays,* County Attorney, and *McLean & Scott* and *H. R. Wilson,* Assistant County Attorney, for the State.—On the question of admitting testimony that defendant tampered with State's witness:  Cogdell v. State, 43 Texas Crim. Rep., 178, 63 S. W. Rep., 645; Williams v. State, 22 Texas Crim. App., 497; Underhill on Evidence, p. 152, sec. 121; Martin v. State, 53 S. W. Rep., 849; Ferguson v. State, 31 Texas Crim. Rep., 101; Mass v. State, 128 S. W. Rep., 394.

HARPER, Judge.—Appellant was indicted, charged with assault to murder, and upon a trial he was convicted of aggravated assault, and his punishment assessed at two years imprisonment in the county jail, and a fine of one thousand dollars.

In this case it appears that Harry Hightower and appellant's son, Jerome Day, had an altercation on Monday, January 19, 1909.  Appellant was not at home that day, but upon returning home he was informed about the matter, and it angered him.  Tuesday morning he, in company with his son and Walter Sandy, went over to a Mr. Johnson's to see about the purchase of a horse.  In going to Johnson's the road went by where Mr. Hightower resided.  When they got even with Hightower's some words ensued between appellant and Hightower, when appellant jumped the fence, drew his pistol on Hightower, and compelled him to put down whatever he had in his hands.  There is a difference of opinion as to what Hightower had, he claiming only to have had a wrench which he was using to grease a wagon, while appellant and Sandy say that he had the wrench and a rock.  Whatever he had, appellant required him to put it down, and after some words appellant returned to his buggy and started to drive off.'  Hightower ran in his house and, as he says, in search of his pistol, but failing to

find it, got a Stillson wrench, went out on the gallery, and threw it in position as though it was a pistol, and told appellant to "run." Instead of running, appellant jumped out of his buggy and shot at him three times. No one was hurt or injured at this time. Appellant drove on off, and after he left Hightower says he found his pistol, and was cleaning it when Simpler came along, and he admits telling Simpler "that he was going to take the six-shooter off of appellant and whip hell out of him." Simpler says Hightower told him that appellant had shot at him two or three times, and he, Hightower, was going to kill him when he came back. Later in the day Simpler says he again saw Hightower, and he wanted him (Simpler) to stay and help him take the pistol off of appellant—that he was going to "whip hell out of appellant." Simpler says he would not stay, and advised Hightower to let appellant alone, and if appellant bothered him (Hightower) he would give him a five-dollar hat. That when he (Simpler) would not stay, Hightower remarked he had Con Henderson there to help him take the pistol off of appellant.

After the morning trouble Hightower went out in the pasture where some boys were hunting, and got a shotgun from one of the boys—to hunt with, he claims. When he returned home his wife informed him that some horses and cattle had broken down a portion of the fence, and he got a hammer and some nails to fix the fence. He went to work on the fence, laying the gun down close to the fence. This fence was near the road appellant would travel in returning home.

Appellant says after the difficulty that morning he went on to Johnson's to see about the horse, and to another point to inquire about his uncle, who was sick at that time, and who did shortly thereafter die. On his way home, when he got near Hightower's, he saw him at the fence, and intended driving on by when he was hailed by Hightower. The version of what took place at this time varies considerably. Hightower says he called to appellant, saying, "What have you got it in for me for?" and appellant replied, "You God damn son-of-a-bitch, what have you got it in for me for?" and shot at him with a pistol, when Jerome Day shot him with a shotgun, hitting him in the eye. That he had nothing in his hand at the time but the hammer. That when he was shot he turned, picked up the gun and went in the house. In his statement he is corroborated by his wife, and to a more or less extent by Walter Sandy.

Appellant contends that as he was driving back by, Hightower hailed him, and when he stopped his team Hightower remarked, "What have you got it in for me for?" when he asked him, "What have you got it in for me for?" when Hightower stooped down behind the fence, and he stood up in his buggy and saw him pick up the gun, and as Hightower did so he drew his pistol and fired at him. That as he fired Hightower aimed the gun at them, when his son fired. That when his son fired Hightower halloaed and lowered his gun, when he told his

son to "drive on." That he could have shot again, but as Hightower had lowered his gun he did not desire to do so, and drove on off.

1. Appellant filed his motion for a new trial on October 10th, and it was overruled by the court on the same day. On December 10th appellant filed assignments of error in which a number of matters are complained of not presented in the motion for a new trial. These we can not consider. The unvarying rule in this court has been that nothing that is not presented in the motion for a new trial will be reviewed by this court on appeal. Harvey v. State, 57 Texas Crim. Rep., 7; Veas v. State, 55 Texas Crim. Rep., 125.

2. The first ground in the motion for a new trial complains of the action of the court in overruling the application for a continuance on account of the absence of the witness William St. John. There was no diligence used to secure the attendance of this witness, but appellant attempts to excuse this lack of diligence in his motion for a new trial, alleging that he had been surprised by the testimony of Con Henderson, in the trial of Jerome Day, the day before this case was called for trial. Process had been issued, and the witness was in attendance at one term of the court, but had failed to appear at a subsequent term. Appellant alleges that at the term St. John attended court he talked with him and Con Henderson, and they both told him and his counsel that Mrs. Hightower did not see the difficulty or any part of it. That she was in the dining-room with them, and further, that they had both told him and his counsel that when Hightower came in the house he "examined the gun, and that there were on it marks of two shot, one of which had struck the breech of the gun at the place where it joins the barrel, and the other had scraped the wooden part of the breech a little back of where it first struck." This testimony, if true, was very material to appellant's defense. Mrs. Hightower had testified strongly corroborating her husband in his version of the affair, and that he had no gun in his hands at the time he was shot. The physician, Dr. McCoy, who attended Mr. Hightower when shot, testified he had two wounds in his left hand. "The range of the shot that made those wounds on his hand, as well as I remember now—the one on the finger, I think it was kind of angling, and this, possibly, in the hand here, it ranged backward—running back. The one on the back of the hand ranged back toward the wrist. The one on the finger ranged toward the knuckle in a general direction." There was but one gunshot, and it struck Hightower in the eye, and this testimony shows that the left hand must have been in a position in front of Hightower to have received these shots, and if the witness St. John would testify that the gun received a shot in the breech, it would have been strong corroboration of defendant's testimony—that Hightower had the gun, and had it in a shooting position at the time he was fired on.

When there is a lack of diligence to secure the attendance of a witness, we are loath to reverse a case, but in the attitude this case is

presented to us this testimony is very material, and in Mitchell v. State, 36 Texas Crim. Rep., 278, this court held: "In our opinion there was a lack of diligence, but it is insisted that, although due diligence may not have been used to procure their attendance, if on the motion for a new trial it appears that the testimony of the absent witness is material and probably true, a new trial should have been granted, and this appears to be the rule in accordance with the authorities in this State." See also Hammond v. State, 28 Texas Crim. App., 413; Self v. State, 28 Texas Crim. App., 398; McCline v. State, 25 Texas Crim. App., 247; Tyler v. State, 13 Texas Crim. App., 205, and cases cited in these authorities. See also authorities cited in White's Annotated Code of Criminal Procedure, sec. 642, subd. 2.

In the light of the testimony of the attending physician, we can not say this testimony is not probably true, and inasmuch as appellant swears he will so testify, and that he relied on Con Henderson to make this proof, and that Henderson had changed his testimony, in which he was surprised; also the change in the testimony of the witness Walter Sandy, as shown by the record, we are impressed that a new trial should have been granted. Not knowing the materiality of the testimony and its direct bearing on the real issue in the case, and in view of the sharp conflict on this issue, the court did not err in overruling the application for a continuance when made, but when it became manifest during the trial, this should have been considered on the application for a new trial.

3. As the record is presented to us, we think the court erred in permitting the witness Walter Sandy to testify that Jerome Day and he were running from the grand jury, and that Jerome Day furnished him the money. Upon another trial, if it is made to appear that defendant furnished his son the money, or in any way aided or induced Sandy to avoid going before the grand jury, this testimony, of course, will be admissible, but as shown by this record, defendant had no connection with such conduct.

4. The testimony of the witness Lanie Finlayson, as to defendant trying to induce him to testify that Hightower had threatened his life, is probably admissible against this defendant, as shown by this record. If the witness should say on another trial that he never heard Hightower make any threat, and defendant tried to induce or demand of him that he make such statement, he should be permitted to so testify, but it is immaterial whether or not the witness made any complaint against defendant for such offense, or what was the result of the trial on such complaint. Nor should the witness have been permitted to reiterate this in rebuttal, after testifying to it on direct examination.

5. Nor should the testimony of the witness Hattie Low be admitted—that she saw the defendant waiving a knife over the head of Finlayson. While the court withdrew Hattie Low's testimony, yet in view of the fact that the case is reversed on other grounds, we call attention to

this, that it may not creep into another trial of the case. Appellant was not on trial for the assault on Finlayson, and only such facts should be admitted in this connection as tend to show that he tried to induce or compel the witness to testify to a threat, and in the event there is a conflict in the testimony as to whether defendant did try to induce false testimony, the court should control the purpose for which it is admitted in his charge.

The other matters complained of do not present any error.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*