## DIXON v. STATE. (No. 6508.)

(Court of Criminal Appeals of Texas. Jan. 25, 1922. Rehearing Denied March 8, 1922.)

1. **Criminal law ⬅⬅598(2)—An application for continuance to procure an absent witness held no lack of diligence.**

In a prosecution for homicide, where defendant relied on self-defense, and applied for continuance to get a witness by whom he expected to prove that the deceased had made threats against ⬚efendant's life, which had been communicated to defendant prior to the shooting, where indictment was filed April 8, subpœna for the witness was issued April 11 and served April 25, and the motion presented on May 12, the first day of the trial, and after a delay of one day was again presented, defendant having procured an attachment for the absent witness directed to H. county, where the witness was claimed to be temporarily located, there was no lack of due diligence.

2. **Criminal law ⬅⬅586, 959—Discretion to deny continuance not absolute; on motion for new trial for refusal of continuance, diligence in getting witness, materiality, and probable effect considered.**

The discretion of the trial court to overrule a motion for continuance is not absolute, and, in reconsidering the matter upon hearing a motion for new trial, the sufficiency of the application for continuance in the way of diligence, materiality, and probable effect on defendant's case are matters for the consideration of the court.

3. **Criminal law ⬅⬅1166½(5)—Service of correct list of jurors on defendant, and postponing trial one day thereafter, makes error in return of sheriff on venire writ immaterial.**

In a prosecution for murder, where the sheriff in his return to the special venire writ gave a list of jurors summoned, but left blank the space corresponding with the names and number of three, of whom one attended, another filed an affidavit of exemption, and the other was out of the county and not served, a delay of one day and serving on defendant a correct list of the jurors summoned, as required by Vernon's Ann. Code Cr. Proc. 1916, art. 672, made the irregularity in the return to the writ immaterial.

4. **Jury ⬅⬅55—Juror to be exempted must testify to facts on which he bases exemption in open court or by affidavit.**

A juror to be exempted must appear in open court and testify to the facts on which he bases his exemption or make a written affidavit, and file it with the clerk as provided by Vernon's Ann. Code Cr. Proc. 1916, art. 676.

5. **Criminal law ⬅⬅1166½(6)—Jury ⬅⬅55—Excusing a juror, a state officer, by court without requiring affidavit irregular, but not reversible error.**

The excusing of a juror, who was a state officer, on his informing the trial judge in advance of the trial that he wished to be exempted, to which the judge assented without requiring his affidavit to be filed, was irregular, but, where it appeared on motion for a new trial that the facts establishing the juror's exemption existed, was not reversible error.

6. **Criminal law ⬅⬅1091(4)—Bill of exceptions objecting in general terms to evidence, part of which is admissible, shows no error.**

Where bill of exceptions complains of the admission of evidence, some of which is admissible and some of which should have been excluded, the failure to segregate and point out that which is claimed should have been excluded makes the bill too general to show error.

7. **Homicide ⬅⬅165—Evidence of disagreement between deceased and his wife held admissible.**

In a prosecution for murder, in which the contention between defendant and deceased was difficulties between deceased and deceased's wife, who was defendant's sister, evidence of the conduct of deceased and his wife toward each other, and their relations, was relevant as showing the state of mind of the defendant and the deceased.

8. **Homicide ⬅⬅300(1)—Failure to instruct that defendant had right to arm himself and seek deceased for an explanation of his conduct toward his wife held not error.**

In a prosecution for murder, where no charge was given on the issue provoking the difficulty, and on limiting or qualifying the right of perfect self-defense, the failure to instruct that defendant had a right to arm himself and seek deceased for an explanation of his insulting conduct toward his wife, defendant's sister, was not error.

### On Motion for Rehearing.

9. **Criminal law ⬅⬅595(6)—Refusal of continuance for absence of witness held reversible error.**

Under Vernon's Ann. Pen. Code 1916, art. 1143, making admissible proof of threats when one accused of homicide justifies on the ground of self-defense, in prosecution for murder, where there was a direct conflict as to whether deceased made a hostile demonstration toward defendant, refusal of continuance to enable defendant to get a witness, by whom he expected to prove that deceased had tried to get

---

⬅⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

a pistol, and had threatened to kill defendant, which threats had been communicated to the defendant by the absent witness, was error.

Appeal from District Court, Angelina County; L. D. Guinn, Judge.

Earl Dixon was convicted of murder, and he appeals. Reversed and remanded.

Denman & Collins, of Lufkin, for appellant.

I. D. Fairchild, of Lufkin, and R. G. Storey, Asst. Atty. Gen., for the State.

MORROW, P. J. The judgment condemns appellant to confinement in the penitentiary for a period of 25 years for the offense of murder.

[1] Jim Havard was shot and killed by the appellant, the weapon used being a shotgun loaded .with buckshot. Besides murder, the issues of manslaughter and self-defense were submitted.

The deceased was the husband of appellant's sister and the father of her six living children. Appellant was 24 years of age, and on the day before the homicide had from his mother received information that the deceased had impeached the chastity of his wife, charging that she submitted her person to negroes. On the following morning he procured a gun and shells and went to the home of the deceased.

The family consisted of the deceased, his wife, a son 20 years of age, a daughter, 16 years, another 13 years, and two younger ones who did not testify. All of these spent the night at the Havard home and all save the son were there at the time of the homicide. The son, a short time before the homicide, had been invited by the brother of the appellant to go and examine some stock at his home, and was there at the time his father was killed.

According to the daughters of the deceased, appellant came to the home and invited the deceased to go hunting with him. This was declined and a short conversation followed, the deceased sitting in a rocking chair, which was on the porch. Reference was made by the appellant to the controversy pending between the deceased and his wife touching the change of locality, and the deceased referred to the troubles previous and pending between himself and his wife, and said that he had used his best endeavors to please her, and offered to divide the property with her. and the appellant, with an oath, said that he (deceased) had been accusing her, and was doing so for the last time; that he raised his gun and fired twice, striking the deceased in the neck; that no demonstration was made by the deceased, and no threat uttered by him.

The version of the appellant is that he sought the deceased for an explanation of his insulting conduct towards his wife, a sister of the appellant; that he armed himself for protection, the deceased being a dangerous man, and having, according to the information received by the appellant, expressed the intention to kill him. After conversing for some moments, appellant referred to the accusations that he had learned the deceased had made against his wife. The deceased became very angry, cursed the appellant, and said he would kill him; that he threw his right hand to his hip pocket as though he was going to draw a pistol or some other weapon. Appellant, believing that he was going to be killed by the deceased, fired the shots.

A first application for a continuance was overruled, and an exception was duly reserved, and the matter was again presented in the motion for new trial. Pitman, one of the witnesses, would have testified, according to the averments therein, that about a week prior to the homicide the deceased endeavored to borrow a pistol from him, appeared angry, and referred to his wife, stating in substance that he had lived in hell with her for 20 years, and would not put up with the "damn bitch" any longer; that she and her brothers wanted to run him off and get his property; that he did not intend to leave, but he would kill them all; that appellant was the only one with whom he had not had trouble, and that he was the only one who had nerve enough to fight him, and that if he fooled with him, or tried to take up his sister's troubles, he would kill him; that he would kill any son of a bitch who would take sides with a woman like his wife against him, and try to get his property; that these declarations of the deceased were communicated to the appellant on the second day preceding the homicide.

On the trial of the case the appellant testified to the communication of these matters to him by the witness Pitman. No other witness testified to the same or similar facts. It was shown, however, that the relations between the deceased and his wife had long been unfriendly, and that she had made frequent threats to take his life. This testimony was developed by the state. No reason is given for overruling the application save that the court, in qualifying the bill, says that most of the other witnesses named in the application were present and testified. It was not claimed in the application, however, that any of them save the witness Pitman would have testified to threats.

Touching the diligence, the facts are these: The indictment was filed on the 8th of April; the trial began on the 12th of May, and was concluded on the 16th; subpoena for the witness, who resided in the county, was issued on the 11th of April, and duly served, as shown by the return of the sheriff made on the 25th day of April. The motion was presented on the 12th of May, and the court

announced that he would overrule it. Defect in the service of veniremen resulted in delay of one day in proceeding with the trial; the motion was then renewed, appellant in the meantime having procured an attachment for the witness directed to Harris county, where according to the averments made in representing the motion on the 14th of May, the witness was temporarily located. The state did not exercise its right to controvert the facts showing diligence nor the probability of securing the testimony of the witness by delay. This it might have done if the averments were not true. Roquemore v. State, 54 Tex. Cr. R. 594, 114 S. W. 140; Branch's Ann. Texas Penal Code, § 321.

We discern no defect in the diligence nor does the record suggest, so far as we are able to perceive, that the absence of the witness was due to any fault of the appellant. There is no lack of diligence shown which would authorize the refusal to grant the motion. Donahoe v. State, 28 Tex. App. 13, 11 S. W. 677; Mapes v State, 14 Tex. App. 134; Branch's Ann. Texas Penal Code, § 318; Giles v. State, 89 Tex. Cr. R. 441, 231 S. W. 767. Moreover, the evidence of the absent witness being to support the appellant's defense otherwise resting upon his own testimony, the application is one to which the rule of diligence is not so strictly applied as in some other instances. Koller v. State, 36 Tex. Cr. R. 499, 38 S. W. 44; Beard v. State, 55 Tex. Cr. R. 158, 115 S. W. 592, 131 Am. St. Rep. 806; Mitchell v. State, 36 Tex. Cr. R. 278, 33 S. W. 367, 36 S. W. 456; Duffy v. State (Tex. Cr. App.) 67 S. W. 420; Day v. State, 62 Tex. Cr. R. 452, 138 S. W. 130; Branch's Ann. Tex. Penal Code, §§ 319 and 329.

In submitting the case to the jury, the court instructed, in connection with self-defense, upon the law of apparent danger, and also specifically instructed upon the law of communicated threats. These phases of the case rested solely upon the testimony of the appellant. Obviously, it was material to the appellant that there be testimony other than his own that the threat had been communicated to him. Upon this subject the language of Presiding Judge Hurt, in the case of Gilcrease v. State, 33 Tex. Cr. R. 629, 28 S. W. 531, is pertinent. For quotation and authorities, see Dunn v. State, 85 Tex. Cr. R. 299, 212 S. W. 511.

[2] It is truly said by counsel for the state that a continuance is not a matter of right. It is equally true that the discretion of the trial court to overrule it is not absolute, and, in reconsidering the action upon hearing the motion for new trial, the sufficiency of the application for a continuance in the way of diligence, materiality, and probable effect on appellant's case are matters for the consideration of the court. Harris v. State, 18 Tex. App. 287; Bronson v. State, 59 Tex. Cr. R. 17, 127 S. W. 175; and other cases listed in 2 Vernon's Texas Crim. Statutes, pp. 321, 322. In one case it is said:

"The rule which should govern * * * the trial court in passing, first, upon an application for continuance, and subsequently upon a motion for new trial is: 'If there is such a conflict between the inculpatory facts and those set forth in the application as to render it improbable that the facts stated in the application are material and probably true, the continuance should be refused,' and also a new trial based upon such refusal should be denied. There must, however, not only be such a conflict, but the inculpatory facts must be so strong and convincing as to render the truth of the facts set forth in the application improbable.'" McAdams v. State, 24 Tex. App. 86, 5 S. W. 826; Hollis v. State, 9 Tex. App. 643.

This rule, we understand, has been substantially affirmed and applied in many cases. Duffy v. State (Tex. Cr. App.) 67 S. W. 420; Yantis v. State, 49 Tex. Cr. R. 404, 94 S. W. 1019; Mitchell v. State, 36 Tex. Cr. R. 306, 33 S. W. 367, 36 S. W. 456; Branch's Ann. Tex. Penal Code, §§ 335 and 338.

We have been unable to discern anything in the record upon which there might be justly founded a conclusion that the purported evidence of the absent witness was not probably true. It is in consonance with appellant's testimony; it is contradicted by no witness for the state; no suspicion is thrown upon the good faith of the application. It is not suggested that the witness was a fictitious person. The contrary appears from the return of the sheriff serving the subpœna. The setting and circumstances of the case do not seem to us to render it improbable that the deceased had made remarks similar to those attributed to him in the motion for a continuance. It appeared from the testimony of the state's witnesses that the deceased and his wife occupied separate rooms; that they were unfriendly; that the wife refused to speak to him; that there were families of negroes living near by; that other members of the Dixon family had expressed ill will towards the deceased; that a short time before the homicide the wife of the deceased had gone to her brothers, leaving home in bad humor with the deceased; that she had cursed him, and threatened to take his life on a number of occasions; that they did not eat at the same table; that she manifested hostility towards some of the children, made some of them leave home, and said she was going to get a gun to kill the deceased.

[3] In making his return on the special venire writ, the sheriff gave a list of those summoned, but left blank the space corresponding with the names and number of three of the veniremen. A motion to quash the venire upon this ground was made. One of the missing veniremen attended; one filed an

affidavit of exemption, and one was shown to have been out of the county, and not served for that reason. The mere matter of an irregularity in the return of the sheriff is ordinarily not ground for quashing the writ. The precedents upon this subject are cited and reviewed at some length in the case of Whittington v. State, 86 Tex. Cr. R. 1, 215 S. W. 456, to which we refer. A correct list of the jurors summoned having been served upon the appellant, and the trial postponed for one full day after the service, his rights in this respect were fully conserved. Swanney v. State, 66 Tex. Cr. R. 293, 146 S. W. 548; Ollora v. State, 60 Tex. Cr. R. 217, 131 S. W. 570; Luster v. State, 63 Tex. Cr. R. 541, 141 S. W. 209, Ann. Cas. 1913D, 1089; Code of Crim. Proc. art. 672, and authorities listed therein in 2 Vernon's Texas Crim. Statutes, p. 361.

[4] The law does not contemplate that persons summoned to serve on a special venire shall be excused by the court without the consent of the accused except for some reason exempting such persons from jury service. If such exemption exists, and the person desires to take advantage of it, he should appear in open court and testify to the facts or make written affidavit and file it with the clerk, as provided for by article 676 of the Code of Crim. Procedure. See Crow v. State, 89 Tex. Cr. R. 157, 230 S. W. 148; Clayton v. State, 83 Tex. Cr. R. 57, 201 S. W. 172; Johnson v. State, 86 Tex. Cr. R. 566, 218 S. W. 496; Gunn v. State (Tex Cr. App.) 234 S. W. 399; Bizzell v. State, 72 Tex. Cr. R. 442, 162 S. W. 861.

[5] In the instant case, some of the persons summoned were excused by the trial judge. As to all save one, however, we understand from the record that there was a substantial compliance with the statute. This one was a state officer, and he informed the trial judge in advance of the trial that he wished to take advantage of his exemption, and to this the trial judge gave his assent, but required no affidavit to be filed. The appellant, when the name of the juror was reached on the list, insisted upon process for him. This was refused. The action of the court was erroneous, but probably not an adequate reason for reversal. It was shown upon hearing of the motion for new trial that the facts establishing the exemption of the juror really existed; that he claimed his exemption, and made this known to the court before the trial. The affidavit should have been demanded, and it occurs to us that, when the question was developed upon the trial, prudence would have suggested that the state exercise a peremptory challenge, and thereby eliminate the juror. Campbell v. State, 30 Tex. App. 645, 18 S. W. 409; Rice v. State, 54 Tex. Cr. R. 149, 112 S. W. 299. It was the right of the appellant to have the juror present unless, in excusing him, the procedure provided by law was followed. As stated above, we think, the record in the instant case excludes the idea of injury, but a case might arise in which this would not appear.

[6] There is complaint of the admission in evidence of testimony showing the conduct of the wife of the deceased, including her leaving the premises without viewing the body of the deceased, and her threats to kill him; her harsh conduct towards the children and other details concerning the relations of the deceased and his wife antecedent to the homicide. Complaint is also made of the testimony of the conduct of the brother of appellant in inviting the son of the deceased to leave the premises. As these bills are drawn, no error is shown. Much of the testimony involved was manifestly admissible. It is a general rule that, where a part of a statement is admissible, and a part subject to objection, a bill complaining of the ruling of the trial court in admitting the whole is too general. It should segregate and point out that which is claimed should have been excluded. When the objection is directed to the whole statement, a part of which is admissible, it is not the duty of the trial judge to segregate it, but he has the privilege to overrule the objection. Branch's Ann. Texas Penal Code, § 211.

[7] We will add with reference to the bills in question that apparently the manner in which the case was conducted left open the right to prove practically all of the matters that are embraced in the bills. That is to say, the conduct of the deceased and his wife towards each other, and their relations, which were known to the appellant, are so intimately connected with the state of the mind of both the appellant and the deceased as to render them relevant.

[8] There being no charge to the jury upon the issue of provoking the difficulty, and no instruction limiting or qualifying the right of perfect self-defense, there was no error in the court's failing to instruct the jury that the appellant had a right to arm himself and seek the deceased for an explanation of his insulting conduct towards the appellant's sister. Williford v. State, 38 Tex. Cr. R. 393, 42 S. W. 972; Alfred Smith v. State, 81 Tex. Cr. R. 369, 195 S. W. 595.

Because of the errors pointed out, the judgment is reversed, and the cause remanded.

On Motion for Rehearing.

LATTIMORE, J. [9] The reversal of this case was ordered chiefly for the error of the refusal of a continuance. By the absent witness threats of deceased to take the life of appellant would have been shown, and also the fact of the communication of such threats to the accused prior to the fatal encounter. Article 1143 of our Penal Code expressly makes proof of threats admissible when one

accused of homicide seeks to justify his act upon the ground of self-defense; and in every such case testimony that threats have been made and communicated to the prisoner, is considered competent. In the instant case appellant claimed self-defense, and that he shot deceased to prevent the latter from shooting him. He testified to a demonstration on the part of deceased from which, if threats had in fact been made by deceased to kill him, it might be inferred that the threatened attack had then begun. There was a direct conflict between the testimony of the accused and that of the state witnesses on the question of whether the deceased made any demonstration prior to the time appellant fired the fatal shot. Such conflict strengthens the reasoning upon which must rest the right of the accused to the continuance sought. He testified that in immediate connection with the fatal killing he remonstrated with deceased for his conduct toward the wife of deceased, who was the sister of appellant, and to the fact that deceased said he would then kill him, and that he made a demonstration to get a pistol, and that because of such facts he shot and killed deceased. The state witnesses denied these facts. If shortly before said time deceased had tried to get a pistol from the absent witness, saying that appellant had nerve, and that he would take no chances with him, but would kill him if he attempted to take the part of deceased's wife against him, this would not only be admissible, but, if believed by the jury, must needs have greatly strengthened their belief in appellant's theory of the killing.

So believing, we adhere to our view that the continuance should have been granted, and the state's motion for rehearing will be overruled.