ACIE TYLER v. THE STATE.

No. 15623. Delivered March 22, 1933.
Reported in 58 S. W. (2d) 511.

The opinion states the case.

*John L. Dannelley,* of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Rape is the offense; punishment, 7 years in the penitentiary.

The indictment charged statutory rape. The evidence showed that the prosecutrix, Opal Gibson, was over 14 years and under 15 years of age at the time of the alleged offense. She fixed the date definitely of the alleged assault as the night of January 31, 1931, because the next day after the occurrence she marked it on the calendar. The prosecutrix' testimony in brief was as follows: She had known the appellant for several months prior to the alleged occurrence and had gone with him several times. On the night of January 31, 1931, she, the appellant, her sister, and another young man, a cousin of the appellant, had gone to a dance. They left the dance about 10:30 o'clock at night and drove back in the direction of Seagraves. They stopped the car near a railroad track and the appellant suggested that they get out of the car; that he wanted to tell her something. After they had walked a short distance from the car, the appellant grabbed her and tied her hands behind her back with a necktie. She was fighting all the time but she was not screaming. After he got her hands tied, he threw her down and then got on top of her. She further testified that she did not fight or kick the appellant but merely tried to make him behave and she never screamed. She testi-

fied that the appellant actually penetrated her female organs with his male organ; that this was the first act of intercourse she had ever engaged in and resulted in pain and some bloodshed to her. After the act of intercourse, the appellant untied her hands and they went back to the car and she did not tell anyone about the occurrence until the week following January 31, 1931, when she missed her monthly period and she then communicated the fact to her mother. She did not know whether her mother saw her clothes or not, but that she washed them after the occurrence. She further testified that a short time thereafter she told the appellant about her pregnant condition and the appellant tried to get her to have an abortion, which she refused to do; that twice after said occurrence she and her sister had gone out riding with the appellant and another young man.

There was no testimony that any one ever saw any bloody clothing nor did any one testify with reference to the condition of prosecutrix' privates. None of the occupants of the automobile testified that they had heard any scream or outcry on her part. She was entirely uncorroborated by any fact or circumstances showing that on this particular night she was raped and ravished by the appellant.

The mother of the prosecutrix testified that about a week after the occurrence her daughter told her about some character of trouble she had had with the appellant. She further testified that she afterwards saw the appellant at her house but she never had any conversation with him about the matter.

The appellant denied that he had ever had any intercourse with the complaining witness. He testified that he was in the state of New Mexico on January 31, 1931, the time the prosecuting witness alleged that the offense was committed. In this he was corroborated by other witnesses, but he admitted that on February 7th he, the prosecutrix, her sister, and his cousin had gone to a dance together; that they stopped the car on the side of the road and he and the prosecutrix got out of the car to walk around, but at no time were they more than 50 steps from the automobile and were never out of sight of the same. He denied emphatically ever having any intercourse with the prosecutrix.

There was testimony offered by the appellant to the effect that the prosecutrix had been going with a boy about 19 years of age by the name of Orville Byron, and the witness Arthur Cunningham testified that about the middle or latter part of January, 1931, he rode home from church with Orville Byron

and the prosecutrix and he saw the said Byron embrace and kiss the prosecutrix; that Byron said something about not bringing a blanket along and the prosecutrix replied that it wouldn't have done him any good because she was sick. The witness further testified that he had seen the prosecutrix and the said Byron together a great deal about that time and that she had spent several nights at Byron's home.

When the case was called for trial, appellant made an application for a postponement of said case for two days so as to enable him to get the testimony of one H. C. Usrey and also the testimony of one Maud Wright. The application showed that the appellant expected to prove by the said Usrey that he was well acquainted with Opal Gibson, the prosecutrix, and had conversed with her concerning her pregnancy; that the said Opal Gibson told the said witness that she was pregnant and would become the mother of a child; that she had tried to knock it but had been unsuccessful; that she further told said witness that defendant was not responsible for her pregnancy but that a married man was the cause of her being pregnant, but she could not afford to name said married man or charge him with her pregnancy because it would break up a home and he could not marry her. That the said Maud Wright would testify to the following facts: Some two weeks after the birth of said child to the prosecutrix, said witness had a conversation with the said Opal Gibson, in which conversation the said Opal Gibson told the witness that she did not know who was the father of her child, and that it lay between two boys but she didn't know which one of the boys was responsible for said child. The trial court refused to postpone said case, to which action the appellant excepted.

In his motion for new trial, appellant complains of the action of the trial court in refusing to grant said postponement. Attached to said motion for new trial were the affidavits of the said Maud Wright and H. C. Usrey, which affidavit showed that the said witnesses would have testified to the facts substantially as set out in appellant's motion for postponement. The record shows that on the 23rd day of May, 1932, appellant made application for subpoena for a number of witnesses, among them Maud Wright and H. C. Usrey. On the hearing of the motion for new trial, the sheriff of Gaines county testified that he had not received process for the witnesses named in the subpoena until Tuesday morning, the day before the appellant went to trial; that he went to the house where the said Maud Wright had been living and found that she was not there

but had gone to the home of a man by the name of Perry some 20 miles west of Brownfield; that he then telephoned to Brownfield and informed the sheriff of Brownfield to locate said witness and bring her down; that he also called the sheriff of Tom Green county with reference to the witness Usrey and told him he was located at Water Valley and informed him that he had a subpoena for him; that that subpoena had not been returned to him and he didn't know whether it had ever been served; that the sheriff of Tom Green county told him he would go to Water Valley and look for the witness and a couple of hours later he called him up and told him he had been to Water Valley and said he had heard that the said Usrey had moved to Sterling City and had telephoned the sheriff of Sterling City to look for him.

The motion for new trial being supported by the affidavit of the absent witnesses deposing to the facts stated in the application for continuance, the court is not the judge of its probable truth. Section 336, Branch's Ann. P. C.; Thomas v. State, 51 Texas Crim. Rep., 330, 101 S. W., 797; Morgan v. State, 54 Texas Crim. Rep., 549, 113 S. W., 934. We quote from section 319, Branch's Ann. P. C.: "Though the continuance was properly denied for want of sufficient diligence, yet if the absent testimony, viewed in the light of the testimony adduced on the trial, be material and probably true, a new trial should be granted." See Day v. State, 62 Texas Crim. Rep., 448, 138 S. W., 130; Baxter v. State, 150 S. W., 912.

It is well established that the truth of an application for a continuance as well as the merits of the grounds set forth therein and its sufficiency is addressed to the sound discretion of the court to pass upon the same, and it is not granted as a matter of right, although it may meet all the requirements of the law. But it is provided that should an application be overruled and the defendant convicted, if it appears upon the trial that the evidence of the witnesses named in the application was of a material character and the facts set forth in said application are probably true, a new trial should be granted. Article 543, C. C. P. After reading the record in this case, we are of the opinion that there is a very serious question whether the evidence is sufficient to sustain the verdict, and the evidence of the witnesses named in said application for a postponement and whose affidavits are attached to appellant's motion for a new trial are of a material character upon the main issue in the case. We feel that the appellant should not be deprived of any legitimate testimony, however slight, that may tend to

contradict the prosecutrix as to whether or not the appellant had had carnal knowledge of her, that being the vital point in the case. See Eppison v. State, 82 Texas Crim. Rep., 367; see, also, Branch's Ann. P. C., sec. 324, subds. 3 and 4, and cases cited.

Further errors have been assigned by appellant's counsel, but they are of a nature that renders our determination of them unnecessary.

Having concluded, after a careful review of the record in this case, that the appellant's application for a new trial should have been granted, the judgment of the trial court is reversed and remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.